CALEB J. MOORE *vs.* JAMES B. COUNCILMAN ET AL.

*Real estate brokers; commissions; trustees to sell land; employment of broker.*

A real estate broker can not recover commissions on a sale he was not employed to make, or where his actions were not ratified.       p. 637

Where trustees were directed to make sale of certain real estate, and to bring into Court the money arising from the sale to be distributed under the direction of the Court, one trustee has no authority to bind his co-trustee to pay commissions to the broker for finding a purchaser for the property, so as to affect the fund.       p. 637

*Decided June 23rd, 1911.*

Appealed from the Circuit Court for Baltimore County (BURKE, C. J.).

The case was argued before BOYD, C. J., BRISCOE, PEARCE, PATTISON and URNER, JJ.

*J. Kemp Bartlett* and *Charles Lee Merriken,* for the appellant.

*D. S. McIntosh* and *Wm. S. Bryan, Jr.,* for the appellee.

BRISCOE, J., delivered the opinion of the Court.

The facts upon which the decision of this case must turn are so fully and clearly stated in an opinion by JUDGE BURKE, who decided this case in the Court below, and set out in the record here, that we need not restate them, but will transcribe them on this appeal. They are as follows:

On the 24th of September, 1902, Mrs. Sadie C. Council-
man filed a bill of complaint in this Court against her hus-
band, James B. Councilman, and others. The allegations of
this bill need not be examined. The bill appears among the
proceedings in this cause. It prayed for the appointment of
a receiver; for a decree declaring that Mrs. Councilman was
entitled to a lien for betterments of the property known as
Woodhome; and that property be sold to satisfy said lien
and also a mortgage thereon executed by James B. Council-
man to her amounting to $72,500. Mr. Councilman, in addi-
tion to this mortgage, was also indebted to his wife in a large
sum of money. This Court appointed the Safe Deposit and
Trust Company receiver of the property.

Mrs. Councilman died in 1906, and Mr. William Shepard
Bryan, her executor, was made party plaintiff in her stead.
Under her will the said Deposit and Trust Company was
appointed trustee of her estate.

On the 18th of March, 1907, this Court decreed that Mrs.
Councilman had no lien by way of betterment on the fee
simple interest in Woodhome; but reserved in the decree the
question of the rights of the executor of Mrs. Councilman
under the mortgage. This decree was affirmed in *Bryan*
v. *Councilman,* 106 Md. 380.

On the 18th of September, 1907, this Court decided that
under the Rule in Shelley's Case, James B. Councilman,
under his uncle's will, took a fee simple estate in Woodhome.
It follows from this construction of the will of James B.
Councilman, the elder, that the mortgage was a lien upon
the fee simple interest in that property.

The mortgage being overdue and in default, the Court
passed a decree on the first day of October, 1907, for the
sale of the mortgaged property, and appointed David G.
McIntosh and Edward N. Rich trustees to make the sale.
The trustees were required by the decree "to bring into this
Court the money arising from said sale, to be distributed
under the direction of this Court, after deducting the costs

of this suit and such commissions to the said trustees as the Court shall think proper to allow." The trustees advertised the property at public sale, and offered it at public auction on November 14th, 1907; but, receiving no satisfactory bid, they withdrew it.

On the 29th of May, 1908, the trustees reported to the Court as follows: "The trustees now report that they have received from Doctor Theodore Cook an offer for the whole property, containing about two hundred and twelve (212) acres, for $42,500.00, and upon the terms set out in a letter from said Cook addressed to these trustees, under the date of May 27th, 1908, which has been accepted by the trustees, subject to the approval of this Court, and which letter is annexed hereto as part of this report.

"And these trustees respectfully recommend that the sale be ratified and confirmed by this Court, the sum named as a purchase price being the largest which these trustees have been able to get, after constant and repeated efforts made by themselves and by the Safe Deposit and Trust Company, all of which is respectfully submitted."

Exceptions were filed to the sale by the purchaser and certain judgment creditors. These exceptions were overruled and the sale was finally ratified; an appeal was taken from the order of the final ratification and this order was affirmed in *Cook* v. *Councilman,* 109 Md. 622.

It appears from the facts stated that J. B. Councilman had really no interest in the property. He had mortgaged it for a great deal more than it sold for. The only parties to the cause who had any real or substantial interest in the property, or in the proceeds of the sale were the creditors of James B. Councilman, and the executor and trustee of Mrs. Councilman's estate. In the proceedings to which we have referred, Mr. Edward N. Rich represented James B. Councilman, the mortgagor, and Colonel McIntosh appeared for the executor, and also for the trustee under the will of Mrs. Councilman, the Safe Deposit and Trust Company.

On the 5th of March, 1909, Caleb J. Moore, doing business under the name and style of Moore & Walton, a licensed real estate broker, filed a petition in this case, alleging:

First: "That heretofore, to wit, in the month of February, in the year 1908, the defendant, James B. Councilman, who was then in the City of Philadelphia, in the State of Pennsylvania, took up with Messrs. Bamberger Brothers & Company, of that city, the matter of finding a purchaser for the real estate in these proceedings mentioned; that the said firm of Bamberger Brothers & Company, who were then engaged as real estate brokers in the City of Philadelphia aforesaid, took up with Messrs. Shriver, Bartlett & Company, of Baltimore City, in the State of Maryland, the matter of finding a purchaser for said property; that the said Shriver, Bartlett & Company, being engaged in the commercial collection business, solicited the services of your petitioner, who was then and is now a licensed real estate broker, to find a purchaser for said property.

Second: "That pursuant to the solicitation set forth in the preceding paragraph of this petition, your petitioner offered the said property for sale to several persons, and among the persons to whom he offered the property for sale was Doctor Theodore Cook, Sr., who shortly thereafter became the purchaser of said property at and for the sum or price of $42,-500; that the trustees in these proceedings reported to this Honorable Court the sale aforesaid, which sale has since been finally ratified and confirmed.

Third: "That your petitioner was the procuring cause of the aforesaid sale to Doctor Cook, and is, therefore, entitled to receive the usual commissions of five per cent. on the purchase price of said farm, or the sum of $2,125.00."

The petition then prays that an order be passed allowing that sum out of the funds in the hands of the trustees in these proceedings.

Mr. Bryan, as executor; the Safe Deposit and Trust Company, trustees, and Colonel McIntosh, as trustee, filed

answers to this petition. The answer of the executor is as follows:

"1. That he knows nothing of his personal knowledge of the matters alleged in the petition of Caleb J. Moore, and therefore requires clear and full proof of every matter of fact alleged therein.

"2. This respondent, as executor of Sadie C. Councilman, holds the mortgage for the satisfaction of which the property in these proceedings mentioned was sold to Doctor Theodore Cook, and is therefore entitled to the entire net proceeds of the sale of said property after deducting therefrom the proper costs of the sale.

"3. This respondent not only never consented to the employment of the said Caleb J. Moore, but, so far as this respondent can recall, never even heard of said Moore in any connection whatever until after the petition, here being answered, was filed.

"4. This respondent is advised, believes and therefore charges that James B. Councilman, the mortgagor, had no authority to employ the petitioner herein or any other broker or agent, to secure a purchaser for the property sold in these proceedings, on such terms that the petitioner, or any other broker or agent, should be compensated for his services out of the portion of the proceeds of the sale of such property which are required to pay the mortgage debt and costs of the proceeding; and that therefore even if the allegations in the petition, if true, would be taken to give the petitioner Moore a claim of any sort against James B. Councilman, the mortgagor, they are without avail to give the petitioner any claim against this respondent, the executor of the mortgagee, or against anyone claiming through or under this respondent.

"5. This respondent is advised, and therefore charges, that it was not within the power of any person without first being authorized by an order of this Court, to make a valid contract to employ the said Caleb J. Moore to perform any services in connection with the sale of the property before the

Court in these proceedings, for which services said Moore was to be compensated out of the proceeds of the sale of said property.

"6. This respondent on information and belief, denies that the said Caleb J. Moore was the procuring cause of Doctor Theodore Cook's agreeing to purchase said property; and this respondent, on information and belief, also denies that the said Caleb J. Moore had anything to do with inducing Doctor Cook to make an offer to purchase the property in this proceeding mentioned."

The answer of the Safe Deposit and Trust Company, trustee, accepts the answer of William S. Bryan, Jr., executor of Mrs. Councilman.

The answer of Colonel McIntosh, trustee, is as follows:

"This respondent in reporting the sale of the property in question to this Court with his co-trustee was not cognizant of any claim for commissions which had or could be made on account of the sale of said property, and therefore no reference was made thereto in said report.

"This respondent does not admit any authority on the part of James B. Councilman to employ brokers for the sale of the property in question, the said Messrs. Bamberger Brothers & Company of Philadelphia, or Messrs. Shriver, Bartlett & Company of Baltimore City, or the said petitioner, Caleb J. Moore, and this respondent never had any communication with the said James B. Councilman in reference to a sale of the property, did not represent him in the proceedings, and had no communication with either or any of the brokers claimed to have been engaged in offering the property for sale, and did not employ them or either of them to make the sale. And this respondent, so far as his knowledge goes, denies that the purchaser, Theodore Cook, Sr., was induced to buy the same through the instrumentality of either or any of said brokers, and he denies that the petitioner is entitled to commissions claimed by him out of the proceeds of sale reported to this Court."

Upon the pleadings as thus stated, testimony was taken in open Court and from an order of the Circuit Court for Baltimore County dated on the 9th day of June, 1910, refusing and disallowing commissions, to the appellant and dismissing the petition this appeal has been taken.

The rules and principles of law controlling brokers' commissions for the sale of real estate, established by this Court, have been settled by a number of recently adjudged cases, and it will only be necessary to refer to a few of them, as supporting the general principle announced by all of them. *Hollyday* v. *Southern Agency,* 100 Md. 296; *Walker* v. *Baldwin,* 106 Md. 632; *Blake* v. *Stump,* 73 Md. 160; *Keener* v. *Harrod,* 2 Md. 70.

The complete answer, however, to the appellant's contention in this case is that the facts, as disclosed by the record, do not bring the case within a single principle asserted by the adjudged cases. The trustees who were appointed by the Court deny that they employed him to make the sale, and they are here resisting his application. The executor, Mr. Bryan, denies in his answer that he ever employed or consented to his employment to make the sale. His testimony is confirmatory of the answer filed by him and set out in the record.

Col. David G. McIntosh, one of the trustees, in his testimony in support of his answer, testified in answer to the following interrogatories:

"2 Q. Will you please tell his Honor whether or not you ever in any way, directly or indirectly, employed Mr. Moore or Bamberger or any other real estate broker for the purpose of selling this Councilman property? State further everything you did in the matter in a narrative form.

"A. I never employed or was privy to the employment of Dr. Cooke or Bamberger in this meeting——

"Mr. Bryan: You mean Mr. Moore or Bamberger?

"Witness: Yes; Mr. Moore. And I do not think I ever heard Mr. Moore's name called until long after the sale, and

probably when this petition was filed; it was a surprise to me.

"The Court: The petition for fee?

"Witness: Petition for commission; yes, sir. Mr. Rich is correct, I think, in stating that Bamberger's name was mentioned at a meeting at the Safe Deposit Company, but I do not understand from my recollection that there was any discussion, as his language would imply, about commissions; and I am pretty distinct that after a long interview about the terms of the sale—because there were a number of propositions embraced in it; and we went backwards and forwards over those with Dr. Cooke—that after all that had been gotten through with and our minds had finally been pulled together to the acceptance or agreement to accept his offer, a question was asked, as I recollect, incidentally, How about commissions; is there any commission? I think that was asked by Mr. Marshall. And the reply was made instantly—I think it came from Dr. Cooke—No; there will be no question about commissions. And the propriety of reporting the sale with commissions was not considered by me at all. $42,-500 was, we thought, a very low figure; and I am unable to say what the effect of adding commissions or subtracting commissions out of that would have been. I had been engaged trying to sell the property to other parties, and I never knew of Cooke—I mean—yes, Cooke—until a short time previous. I heard it through the Safe Deposit Company. I never heard of this claim of Moore or of Bamberger as having anything to do with the sale. I think that is all I have to say."

By an agreement of counsel it was admitted that Mr. Edward N. Rich, the co-trustee, would testify: "I had no conversation with anyone representing Bamberger Bros. & Company until after the sale to Doctor Cooke when I saw the agent—I think Mr. Moore—and I deny any liability for Commissions."

It is quite clear from the correspondence contained in the record that Mr. Rich did not intend to employ or recognize

the authority of the petitioner, to make the sale, and even if this be conceded, it would not bind his co-trustee, Col. McIntosh, so as to affect the fund. *Latrobe* v. *Tiernan,* 2 Md. Ch. Dec. 480; *Sewell* v. *Costigan,* 1 Md. Ch. Dec. 208; *Cohen* v. *Wagner,* 6 Gill, 97.

It is not shown that Mr. James B. Councilman had any authority whatever to represent the trustees to bind the fund here, and it does not appear that he had any substantial interest in the property.

In *Carroll* v. *Manganese Safe Co.,* 111 Md. 256, JUDGE SCHMUCKER, in delivering the opinion of the Court, said, in order to recover under the facts in that case for services, it was necessary for the party to prove also either that in making the agreement in respect to compensation he acted on behalf of the appellee with express or implied authority for that purpose, or that the agreement was subsequently adopted or ratified by the appellee, or its fruits accepted with knowledge of the circumstances of their acquisition. As in that case, so in this, the record failed to supply legally sufficient evidence of proper authority on the part of the alleged agent or ratification of his acts by the defendant, and there was no recovery.

The cases of *Tyson* v. *Mickle,* 2 Gill, 377; *Gray* v. *Lynch,* 8 Gill, 404, and numerous other cases from other jurisdictions relied upon by the appellant and cited in his brief, rest upon an entirely different principle and are not applicable here.

In the case of *Richards* v. *Jackson,* 31 Md. 250, it was distinctly held that it is not sufficient that the broker should produce a person who enters into an agreement to purchase, but he must actually purchase, by complying with the terms agreed upon, unless his failure to do so is occasioned by the default of the vendor.

The following cases are in full accord with those we have cited; *Attrill* v. *Pattison,* 58 Md. 251; *Melvin* v. *Aldridge,* 81 Md. 658; *Leupold* v. *Weeks,* 96 Md. 288; *Martien* v. *Baltimore,* 109 Md. 268; *Slagle* v. *Russell,* 114 Md. 418.

For the reasons stated we are in entire accord with the conclusion reached by the learned Judge who decided this case in the Court below, and we therefore affirm the order appealed from.

*Order affirmed, with costs.*