## ALLAN RUTHERFORD *v.* PETRINA MANCUSO

[No. 26, April Term, 1942.]

*Decided May 27, 1942.*

The cause was argued before SLOAN, DELAPLAINE, COLLINS, FORSYTHE, and MARBURY, JJ.

*Solomon Liss* and *Leonard J. Harmatz* for the appellant.

*Louis J. Jira*, with whom was *Powell Vickers* on the brief, for the appellee.

MARBURY, J., delivered the opinion of the Court.

The appellant, a licensed real estate broker, brought suit against appellee in the Baltimore City Court for commissions claimed due on the sale of certain real estate in Baltimore City. The case was tried before the court sitting without a jury, and resulted in a verdict for the defendant, and from the judgment on this verdict the case comes here.

The appellee signed what is known as a multiple listing contract on November 13, 1939, by the terms of which the appellant was authorized to sell her property on commission at the rate of 5 per cent. on the first $5,000, and 3 per cent. on the balance. The authority given in the contract was to continue for a minimum period of three months, and not for more than six months. Either party, by giving thirty days' written notice, was authorized to cancel the contract at the end of the minimum period or any time thereafter. It was further provided that if any agreement to sell the property was negotiated during the life of the contract or within six months thereafter to anyone having made inquiry either directly or indirectly of the owner regarding said property during the life of the contract, then the appellant would be entitled to a commission on the amount for which the property was sold. The appellant, however,

was to have no claim for commissions on any sale made by another realtor after the expiration of the contract.

On January 12, 1940, the appellee gave written notice to the appellant revoking and rescinding his agency to sell or list her property as of February 13, 1940, which was the end of the minimum period of three months. Within a few days of February 13, either before or after that date (and this is the crucial question), the appellant took a Mr. and Mrs. Pankow and a Mr. and Mrs. Welsh to see the property in question. Subsequently, in June, 1940, and unknown to the appellant, the Welshes and the Pankows bought the property. The settlement was made on July 2, 1940. The appellant knew nothing about this sale until he happened to be passing the property early in the following October. He then stopped to see if it was still for sale by the appellee, and found that it had been sold.

The date of the visit to the house by the appellant and the ultimate purchasers is the issue of fact which is determinative of the case. It is agreed that it was on Sunday. The appellant states that it was February 11, which is two days before his contract expired. He is supported in this contention by the notes he made on his multiple listing cards of the property. One of these, dated February 4, 1940, is to the effect that Mrs. Welsh called and wanted to see the property on Saturday. The following Saturday would have been the 10th. Then on the 11th, his card shows a note that he showed it that day to Mr. and Mrs. Welsh and Mr. and Mrs. Pankow. According to the note, they said they liked it very much, but could not possibly pay the price at which it was listed, which was $10,500, subject to a ground rent of $90.

The appellee testified that the appellant was not there on February 11, and she thought it was a week and a half or two weeks after the contract had expired when he brought the purchasers there. She was unable to fix the exact date, but said it was after the sign was removed from the property on February 14. Mrs. Pankow, one

of the purchasers, said that the original appointment was made for February 11, but she was ill and couldn't go, and a week or two weeks later, she went out with the appellant to see several houses. There were disadvantages to all of the first ones he showed her, and then he told her he had a piece of property, at least he did have it, and he thought it was still for sale, and the price was $12,500. She told him she could not purchase the property at that price, but, nevertheless, they went to look at it. This was the property of the appellee, which they finally bought. She said she did not bother any more about this property until in June, when she was looking at another property not very far from this, walked by it, saw the appellee, found she still had the property for sale, came back the next day and offered $8,000, and eventually bought it at $8,500. Mrs. Welsh, who is the daughter of Mrs. Pankow, corroborates the fact that the visit wasn't on the 11th, and thinks it was on the 18th.

On these facts, the court below said that the appellant had failed to sustain the burden of proof, on the time of the visit, and that on that basis he found for the defendant. Gen. Rules of Prac. & Proc., 1941, Part Three, III, Trials, Rule 8, of this court relates to the procedure where a suit at law is tried before the court sitting without a jury, and authorizes a review here, both on the law and on the evidence. In Section (c) of the rule it is stated: "Upon appeal the Court of Appeals may review upon both the law and the evidence, but the judgment of the trial court shall not be set aside on the evidence, unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." We have carefully examined the evidence in this case, and are unable to say that the judgment of the trial court on the evidence is clearly erroneous. Therefore, under the rule, and following the practice heretofore adopted in equity cases, it will not be disturbed.

A further question is raised by the appellant. This is, that even if the visit with the ultimate purchasers

did take place after the termination of the contract, the actions of the appellee on that visit amount to a waiver of the notice of termination. All that happened at that time is that the appellee permitted the appellant to exhibit the property to his prospects, and accompanied him in showing them through the property. There was some discussion between them as to the price, and Mrs. Pankow said she couldn't pay it. The testimony does not show clearly just who entered into the discussion. The appellant cites a number of cases from other jurisdictions: *Sterling v. Radford,* 126 Wash. 372, 218 P. 205; *Umphray v. Hufschmidt,* 73 Cal. App. 140, 238 P. 749; *Moore v. Borgfeldt,* 96 Cal. App. 306, 273 P. 1114; *Moran v. Bair,* 304 Pa. 471, 156 A. 81; *Gulf Trading Co. v. Radcliff,* 216 Ala. 645, 114 So. 308; *Rawlings Mfg. Co. v. Red Run Golf Club,* 220 Mich. 30, 189 N. W. 877. These cases, however, are concerned with situations where the broker continued the negotiations and either had the contract signed himself, or went further and closed the sale. In this case the broker had nothing to do with the sale except to bring the purchaser to look at the property. While it was through him that the purchaser learned of the property, he did not complete the sale, and, as a matter of fact, the sale was completed on different terms from those he knew about and at which he was authorized to sell.

In the case of *Boswell v. Hostetter,* 129 Md. 53, 98 A. 222, 223, which was a suit by a real estate broker for commissions for the sale of a farm, the contract between the two was in writing as in the instant case. An exclusive right of sale was given for a period of twelve months, the rate of commissions was stated, the sales price, and the terms of sale. About a month after the year had expired, the broker learned of a prospective purchaser and told the owner. The owner replied that the broker's contract had expired. The broker replied: "But you still want to sell your farm," and the owner answered: "Well, yes; but it will have to be done soon; you know it is getting late." This court held in that

case that this conversation was entirely too uncertain, vague and indefinite to constitute any basis for a recovery of commissions. That decision is later quoted with approval in the case of *Brown v. Hogan,* 138 Md. 257, 113 A. 756.

In the case before us, we do not even have the terms of any conversation, which would form the basis of either a waiver of the termination date of the written contract or of a new contract between the owner and the broker. There is no theory upon which the conversation in February would give the appellant the right to recover commission.

*Judgment affirmed. Appellant to pay the costs.*