ARTHUR N. ROGERS *v.* MARY F. GARRIGUES

[No. 56, October Term, 1945.]

*Decided January 8, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Charles W. Main* for the appellant.

*Nathan J. Felsenberg*, with whom was *James M. Hoffa* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

The appellant, Arthur N. Rogers, sued Ralph A. Garner, National Home Building Company, Inc., and the appellee, Mary F. Garrigues, for commissions on the sale of property owned by the appellee in Baltimore City. Demurrers were filed by all the defendants, sustained as to the first two and overruled as to the appellee, who filed general issue pleas.

The appellant then proceeded to trial only as against the appellee. At the conclusion of the plaintiff's case, the Court granted a demurrer prayer and took the case from the jury. The appeal challenges that ruling.

The plaintiff testified that he was a licensed real estate broker in Baltimore City. About the 1st of November, 1944, Dr. Evan A. Gilkes asked him to look for a property suitable for a doctor's office, and he submitted several pieces of property, which were not acceptable. The witness learned from a tenant that the property 700 N. Gilmor Street was for sale, and that Mrs. Garrigues was the owner. About November 18th, he called her on the phone, and went to call on her at her home on Eutaw

Place. She informed him that she was anxious to sell and that she had given an exclusive agency to a real estate broker named Ralph A. Garner, and told him to get in touch with Mr. Garner. The witness phoned Mr. Garner, and was informed that the property had been sold. The witness then phoned Mrs. Garrigues, who said she had not signed any contract of sale; when the witness told her he had a Doctor interested in buying, she invited them to come to see her. They did so, and after some general conversation she said she would be glad to sell to the Doctor, because she believed he would keep the property up, whereas if it were sold to a speculator it might be cut up into apartments. "Then she told me to take Dr. Gilkes down to Mr. Garner and to tell him that she would like Dr. Gilkes to get the property." The witness and Dr. Gilkes called on Mr. Garner, and a few days later Dr. Gilkes accepted the property at its quoted price; Mr. Garner drew an agreement, which was signed by Dr. Gilkes and by Mr. Garner, as the agent of Mrs. Garrigues. The agreement recited that commissions should be paid only to The National Home Building Co., Inc. (the name in which "Mr. Garner trades"). The witness told Mr. Garner he would not subscribe his name to this agreement. "I'm putting you on notice I'm entitled to commission, I want my commission, and you are selling the property to my client, and I'm demanding commissions." Mr. Garner told him he would not pay him any commission.

On cross-examination the witness testified that when he first called upon her Mrs. Garrigues said: "I'm sorry you didn't come a few days sooner, just yesterday, or day before, I put the house in Mr. Garner's hands, I want to sell the house and sell it bad, you go see Mr. Garner, he is my representative." He was then asked whether she said anything about paying the witness for a sale, if he made one; he replied, "she said somebody would get paid, because she allowed a commission."

"Q. You understood her to mean by that that she was going to pay a commission to Mr. Garner? A. No, I

thought possibly I would be able to get a commission, or a portion of it, like we always do, like I sell property for Mr. Dubner, and if he is agent, I get half commission from him as broker.

"Q. When you have the exclusive agency to sell and another real estate agent sells it, you usually split the commission with another agent, is that correct? A. Yes.

"Q. And in this case, when you knew that Mr. Garner had the exclusive agency, did you ask Mr. Garner whether he would pay you half of the commission? A. I certainly did, yes.

"Q. And what did he tell you? A. He said no."

Dr. Gilkes testified that he called on the appellee with Mr. Rogers; she "called Mr. Garner's office to arrange a visit for us, and she suggested that I was to her a suitable party to purchase the property, and I left with Mr. Rogers to go there." He also testified that Mr. Rogers was not his agent, and he did not pay him for his services.

We find nothing in the record to support an inference that Mr. Rogers was employed by the appellee. He was told at the outset that she had given an exclusive agency to Mr. Garner. He testified that he thought he would be able to get Mr. Garner to split commissions, that this was the usual practice among brokers, where one has an exclusive agency and another produces a purchaser. But he failed to reach an agreement to that effect with Mr. Garner. He cannot now exact double commissions from Mrs. Garrigues, after he failed to press his action against Mr. Garner.

The general rule is well established, that "to entitle a real estate broker to commissions for the sale of property, it must appear first, that he was either employed by the vendor to sell the property, or, if he acted without precedent authority, that the vendor ratified his unauthorized acts (*Bond v. Humbird,* 118 Md. 650, 85 A. 943), and second, that his acts were the procuring cause of the sale." *Hill v. Iglehart,* 145 Md. 537, 547, 125 A. 843. In that case it was held that, although the broker

was the procuring cause, his authority had been terminated before the sale was consummated, without reservation. In the case at bar there was no employment by the appellee, express or implied, and no ratification of the appellant's acts. Indeed, the appellee might well have assumed that the appellant was acting for the purchaser whom he described as "his client."

It is said in *Restatement, Agency,* Sec. 441, Comment (C) : "One has no duty to pay for services officiously rendered without request although resulting in benefit to him, as where a real estate broker without previous communication with the principal procures a customer who purchases the principal's land." See also cases cited in notes 43 *A. L. R.* 842 and 49 *A. L. R.* 933. In the case at bar there was communication with the principal, but she referred him to her exclusive agent. Had the appellant believed that he was entitled to look to the principal for remuneration, he would hardly have made the proposition he did to the exclusive agent, for a share in commissions claimed by the latter. He was not misled by anything the appellee said, but was in the position of a volunteer throughout the negotiations. We think the case was properly withdrawn from the jury.

*Judgment affirmed, with costs.*