ALER *v.* PLOWMAN ET UX.

[No. 156, October Term, 1947.]

632

*Decided May 26, 1948.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, and HENDERSON, JJ.

*Eldridge Hood Young,* with who was *Gerald Kerr* on the brief, for the appellant.

*Charles W. Held, Jr.,* for the appellees.

HENDERSON, J., delivered the opinion of the Court.

The appeal in this case is from a judgment for the defendants entered upon a verdict of the court in a non-jury case, in a suit for real estate brokerage commissions of $600.00, claimed to have been earned when the plaintiff procured a purchaser ready, willing and able to purchase the defendants' home, 4400 Glenmore Avenue, at the agreed price of $12,000.00, but the defendants refused to execute the contract of sale.

Elmer F. Plowman testified to a meeting at his home on April 18, 1946, with two agents of the plaintiff, named

Sinnott, who presented an exclusive listing agreement for sixty days, to sell the property for $12,000.00, with a further notation "will take $11,500.00". Plowman signed this agreement and also signed a letter cancelling a previous listing agreement with another firm. He testified that he told the agents his wife was unwilling to sell and would not sign any agreement, but they told him her name must be on the agreement. He then signed his own name and that of his wife, who was in an adjoining room. The property was listed and advertised, and a few days later, another agent of the plaintiff, Mr. Smith, took Mr. and Mrs. Kolbe to see the property. Mr. Plowman was there and permitted the inspection, but Mrs. Plowman stayed in another room. Later, Smith went to the Plowmans with a signed contract, and deposit, for $11,500.00. He testified that both Mr. and Mrs. Plowman said that was not enough. Mrs. Plowman testified: "I told them how it came to be $11,500. I said I thought they should offer me $12,000." She said that to her husband, but Smith was present at the time. Smith persuaded the Kolbes to raise their offer, and went back with a signed contract for $12,000.00, and a check for a $500.00 deposit. Both the Plowmans declined to accept the offer.

The court found from this evidence, virtually uncontradicted, that Mrs. Plowman was not liable because she did not authorize her husband to contract for her, and did not ratify his action, and further found that Mr. Plowman was not liable because the broker knew that the wife would not sell. We agree as to the wife, but not as to the husband.

A broker is entitled to commissions if he procures a purchaser ready, willing and able to purchase at the agreed price, even though he may have no authority to complete the sale. *Singer Construction Co. v. Goldsborough*, 147 Md. 628, 638, 128 A. 754; Cf. *Neuland v. Millison*, 188 Md. 594, 597, 53 A. 2d 568, 572. But he must prove employment or subsequent ratification. *Rogers v. Garrigues*, 185 Md. 544, 45 A. 2d 277. There was

no evidence of authorization by the wife. Compare *Vincenti v. Kammer,* 159 Md. 523, 56 A. 2d 688. The only evidence of ratification is her failure to object to the showing of the house, which would seem to be insufficient (*Adkins & Douglas Co. v. Webb,* 160 Md. 571, 577, 154 A. 259) and her statement that "they should offer me $12,000." That statement falls somewhat short of a promise to accept such an offer, if made. Although it shows knowledge of the terms of the agreement, we cannot say that it establishes an approval on her part of her husband's action in signing her name to the listing contract. The evidence does not definitely show that she had any knowledge of his prior action.

In regard to the husband, however, there can be no doubt that he authorized and invited the broker to procure a purchaser. He knew, and the agents knew, that the property could not be transferred unless the wife joined in the deed. The question is whether, under the evidence presented, the risk of procuring her joinder in a subsequent conveyance was to be upon the broker, who proposed to spend his time and labor on the project, or upon the husband, at whose instance and request the services were to be rendered. The answer would seem to depend, in large measure, upon the intention of the parties.

We have found no Maryland decision that is controlling upon the point. In some jurisdictions the rule is flatly announced that it is no defense, to a broker's action against a husband, that the wife refuses to join, and hence makes the sale impossible. See *Kaufman v. Haney,* Cal. App., 182 P. 2d 250; *Morgan v. Whatley,* 205 Ala. 170, 87 So. 846; *2 Mechem, Agency* (2 Ed.) § 2447, note 19. In others, liability is made to depend upon whether the broker had knowledge of the wife's attitude and unwillingness to join before the services were rendered. *Hurt v. Sands Co.,* 236 Ky. 729, 33 S. W. 2d 653; *Koffman v. Pack,* 224 Mich. 102, 194 N. W. 586. See also note 156 A. L. R. 1398, and 12 C. J. S., *Brokers,* § 95, page 224. In *Bewley & Rader Land Co. v. Whitaker,* Tenn. App.,

194 S. W. 2d 244, the court distinguished the earlier case of *Campbell v. Campbell,* 155 Tenn. 515, 296 S. W. 9, on the ground that the broker did not know of the wife's attitude in the earlier case and had a right to rely upon the husband's assumption of authority to act for her. In the later case, Mrs. Whitaker did not flatly state that she would not sign the contract or join in the deed, although she indicated an unwillingness to sell. Afterwards, she definitely notified the broker of her refusal, and her husband tried to cancel the agreement he had signed. It was after this that the broker produced a purchaser. The court allowed recovery on a *quantum meruit* basis for services up to the cancellation, but denied the recovery of commissions.

In the case at bar we think the evidence shows that the risk was to be upon the husband. It is not shown that the broker's agents ever heard Mrs. Plowman say she would not sign. When they told Mr. Plowman that her signature must be on the listing contract, he undertook to sign her name, and thus meet the condition they imposed. When he signed her name it was both an inducement to the contract, and, in effect, a warranty that he would subsequently obtain her assent. We think the broker could reasonably rely upon that representation, and the subsequent conduct of both husband and wife was at least calculated to induce a belief that they would both perform. The broker, in our view, was not a mere volunteer, but entitled to rely upon the husband's representation. Accordingly, we shall direct that judgment be entered for $600 against Mr. Plowman.

Judgment in favor of Agnes Plowman, affirmed with costs.

> *Judgment entered for the plaintiff against Elmer F. Plowman for $600, with interest and costs.*