## SNEDKER *v.* BALTIMORE BRICK COMPANY

[No. 33, October Term, 1951.]

*Decided December 5, 1951.*

*Rehearing denied January 8, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*J. Paul Schmidt,* with whom were *J. Louis Boublitz, Jack C. Merriman* and *Weinberg & Green* on the brief, for the appellant.

*Jesse Slingluff, Jr.,* with whom were *Marbury, Miller & Evans* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a judgment for the appellee for costs, in an action to recover broker's commissions of $2,057.11, tried by the court without a jury. The appellant poses two questions, whether he was the procuring cause of the sales in question, and whether his authority and agency had terminated prior to the sales.

There is little dispute as to the facts. The Baltimore Brick Company, in the course of its manufacturing operations, had acquired numerous parcels of "worked out" land which it was holding for sale, either directly or through brokers, but at no time under exclusive listing contracts. In the latter part of 1948 the appellant, a real estate broker, approached Mr. Brown, its president, stating that he had a client interested in buying a forty-acre tract on Washington Boulevard near Gable Avenue. Brown gave him a price of $2,500 per

acre, and suggested that the Company had another tract for sale in the 2300 block on Washington Boulevard, containing about forty-five acres at the same price. Snedker testified that Brown told him the company would pay a five per cent commission if he sold it. Brown testified that nothing was said about commissions, but it was "generally understood, in the event any one sold land, commission would be paid to him". Five per cent is the usual commission. Snedker did not contend that he was given an exclusive listing.

Snedker, in company with Brown, showed the forty-five-acre tract to his client, Mr. Julio, a developer. The tract was rough and ungraded, and Julio said he did not want to buy the entire tract, since he did not know "how the development would work out". He finally agreed to buy 5.4 acres at $2,500 per acre, a contract of sale was signed on January 12, 1949, settlement was made on May 3, 1949, and Snedker received a five per cent commission on the amount paid from the Company. Snedker testified that Brown told Julio that "he would not sell the remainder of the tract to anyone without first giving Julio a chance to buy it". The appellant admits that this verbal statement was not legally binding as an option. Brown testified he told Julio "if we had any inquiry on the remainder of the land, we would discuss the matter with him first, inasmuch as he had pioneered the property".

After Julio had built some houses on the tract he purchased, there were extended negotiations between Brown and Julio as to the purchase of more acreage. Julio wanted a reduction in the quoted price, because of the necessity for grading. Contracts for the sale of 5.9 acres at $2,300 an acre, and 2.5 acres at $2,500 per acre were executed on January 28, 1950, with purchase money mortgages instead of cash. Snedker took no part in these negotiations. His only contact with either Julio or Brown prior to the second sale, was a telephone call to Brown (denied by Brown) in which Snedker said he told Brown he had another client who might be

interested in buying the property. He says Brown told him he was holding it for Julio. Snedker made no claim for commissions at that time.

On or about February 1, 1950 Snedker called at the Company's office and demanded commissions on the consummated sale, which were refused. Thereafter, the company sold additional parcels to Julio on June 13, 1950 and August 2, 1950 at $2,500 per acre. The remaining acreage was sold to the City of Baltimore. Snedker claims commissions on all the sales to Julio.

"The general rule is well established, that 'to entitle a real estate broker to commissions for the sale of property, it must appear first, that he was either employed by the vendor to sell the property, or, if he acted without precedent authority, that the vendor ratified his unauthorized acts (*Bond v. Humbird,* 118 Md. 650, 85 A. 943), and second, that his acts were the procuring cause of the sale.' *Hill v. Iglehart,* 145 Md. 537, 547, 125 A. 843. In that case it was held that, although the broker was the procuring cause, his authority was terminated before the sale was consummated, without reservation." *Rogers v. Garrigues,* 185 Md. 544, 547, 45 A. 2d 277, 278. See also *Aler v. Plowman,* 190 Md. 631, 633, 59 A. 2d 196. In *Howard v. Street,* 125 Md. 289, 300, 93 A. 923, 926, it was said: "In such an agency as here, the principal had the absolute right to withdraw the authority before the sale was made, and if afterwards he availed himself of the efforts of the agent and made the sale to the agent's customer he is not liable to the agent for commissions unless his withdrawal was made in bad faith towards the agent." See also *Rutherford v. Mancuso,* 180 Md. 628, 26 A. 2d 374, 140 A. L. R. 1016.

In the instant case the trial court said: "It is clear that there was at the time of the first sale and settlement therefor, no special agreement or understanding about the agent's reward for any future sales to Julio. The subject was not even mentioned. Mr. Snedker says he thought it was understood, but his subsequent actions during the period which followed until after the second

sale appear inconsistent with that belief. I find there was no such understanding." We think that finding is not clearly erroneous. When asked by the Court whether he had ever discharged Snedker, Brown replied: "He was never actually employed by us." Moreover, the written contract of sale executed on January 12, 1949, which was prepared and signed by Snedker, as a witness to Julio's signature, contained a clause reading: "The Vendor agrees to pay the usual rate of commission as fixed by the Real Estate Board of Baltimore City, based on the total purchase price, to E. H. Snedker & Co.," and a further clause: "This contract contains the final and entire agreement between the parties hereto, and neither they nor their agents shall be bound by any terms, conditions or representations not herein written." If there was any commitment as to future sales to Julio, or any claim to future commissions on such sales, it would seem that the reservation should have been made in that instrument. The absence of any reservation under the circumstances of this case indicates that the agreement as to commissions between the vendor and the broker terminated with that transaction. The broker was paid for what he accomplished. The fact that another sale was made to Julio, a year later and on different terms, does not establish bad faith, nor can it relate back to the previous transaction, as contended.

*Judgment affirmed, with costs.*