SENTRY INSURANCE COMPANY v NATIONAL STEEL
CORPORATION

Docket No. 81511. Submitted October 1, 1985, at Detroit.—Decided
November 18, 1985.

K & D Industrial Services, Inc., entered into an industrial main-
tenance contract with Great Lakes Steel, a division of National
Steel Corporation. The contract required K & D to indemnify
National Steel for liability incurred in connection with K & D's
performance of the service contract or its presence on National
Steel's premises. It also required K & D to purchase contrac-
tor's general liability insurance with coverage of $2,000,000 and
make National Steel an additional insured under the policy. K
& D purchased the insurance from Sentry Insurance, a mutual
company incorporated in Wisconsin. Michael Darby, an em-
ployee of K & D, fell and injured his back while on National's
premises and brought suit against National in Wayne Circuit
Court. Sentry Insurance undertook National's defense in that
case, but Sentry and K & D filed a declaratory judgment action
against National Steel Corporation in Wayne Circuit Court
seeking a ruling that Sentry was not required to defend or
provide coverage to the defendant in the underlying negligence
action. The court, Helene N. White, J., granted summary
judgment in favor of defendant. Plaintiffs appealed, contending
that the insurance policy covering National was void because it
was against public policy as set forth in the statute which voids
indemnity agreements in construction or maintenance con-
tracts which purport to indemnify the promisee for its sole
negligence. *Held:*

The statute plaintiffs rely upon refers to and voids only
indemnity agreements, not insurance policies. K & D might be
able to challenge the requirement in the contract that it
procure insurance to cover National against negligence solely

REFERENCES

Am Jur 2d, Building and Construction Contracts §§ 71, 141-143.

Coverage under builder's risk insurance policy. 97 ALR3d 1270.

Liability of subcontractor upon bond or other agreement indemnify-
ing general contractor against liability for damage to person or
property. 68 ALR3d 7.

on the part of National, but the insurance policy covering National is not void merely because K & D, not National, paid the premium.

Affirmed.

1. INDEMNITY — CONSTRUCTION CONTRACTS — PERSONAL LIABILITY — PROPERTY DAMAGE — PUBLIC POLICY.

An indemnity provision in a construction contract which seeks to protect the promisee from liability for personal or property damage arising from the sole negligence of the promisee is void as against public policy; thus, an indemnitor is not liable for the indemnitee's negligence, unless the indemnitor is also negligent, regardless of contractual language to the contrary (MCL 691.991; MSA 26.1146[1]).

2. INDEMNITY — CONSTRUCTION CONTRACTS — INSURANCE — PUBLIC POLICY.

The fact that a contractual obligation in a construction or maintenance contract requiring one party to purchase insurance to cover sole negligence on the part of the other party is against public policy and is void does not render an insurance policy purchased in accordance with that obligation void; the public policy is concerned not with the existence of the insurance policy, but with who pays the premium (MCL 691.991; MSA 26.1146[1]).

*Tolley, Fisher & Verwys, P.C. (by Mark H. Verwys and Sharon R. Brinks), for plaintiffs.*

*Hill, Lewis, Adams, Goodrich & Tait (by Robert B. Webster and Kevin S. Hendrick), for defendants.*

Before: D. E. HOLBROOK, JR., P.J., and R. B. BURNS and K. B. GLASER,\* JJ.

R. B. BURNS, J. Plaintiff Sentry Insurance, a mutual company incorporated in Wisconsin, commenced this declaratory judgment action against defendants seeking a ruling that it was not required to defend or provide coverage to defendants in an underlying negligence action. Sentry appeals

\* Circuit judge, sitting on the Court of Appeals by assignment.

from a grant of summary judgment in favor of defendant.[1]

Defendant National Steel was added as an additional insured party on a general liability insurance contract between Sentry and plaintiff K & D Industrial Services pursuant to an industrial maintenance contract between K & D and defendant. The contract between K & D and defendant required K & D as the contractor to indemnify National Steel for liability incurred in connection with K & D's performance of the service contract or its presence on National Steel's premises. It also required K & D to purchase contractor's general liability insurance with coverage of two million dollars and make National Steel an additional insured under the policy.

On May 11, 1981, Michael Darby, an employee of K & D, fell and injured his back on National Steel's premises. Darby brought suit against defendant National Steel in Wayne County Circuit Court, alleging that defendant negligently permitted the accumulation of the ore pellets on which he fell. Sentry undertook defendant's defense in the Darby suit and apparently continues to defend defendant in that action. Sentry and K & D later filed the present declaratory judgment action against defendant over Sentry's duty to defend and provide coverage to defendant.

Paragraph 22 of the maintenance contract between defendant and K & D would indemnify defendant against any liability defendant incurred because of injury to persons or damage to property where the injury or damage was connected to K & D's performance of the contract or presence on defendant's premises. K & D also agreed to indem-

---

[1] Great Lakes Steel is either a subsidiary or division of National Steel and the two corporations will be referrred to collectively as "defendant" or "National Steel" in this opinion.

nify defendant even where liability was based on defendant's own active or passive negligence as long as the liability did not result from defendant's *sole* negligence.[2] Paragraph 23 required K & D to purchase contractor's comprehensive general liability insurance with coverage of two million dollars and make defendant an additional insured under the policy.[3]

[2] Paragraph 22 provides as follows:

"*INDEMNITY BY CONTRACTOR FOR PERSONAL INJURY OR PROPERTY DAMAGE:* Contractor shall be soley responsible for and shall indemnify, defend and hold harmless Owner from and against any and all claims, suits, damages, losses, specifically including loss of use of property, and all other liabilities whatsoever, including related expenses and attorneys' fees, for or on account of injuries to or death of any person, including but not limited to employees of Owner or Contractor, and/or loss of or damage to any property, including but not limited to the property of Owner or Contractor, in any way sustained or alleged to have been sustained, directly or indirectly, by reason of or in connection with:

"the performance of the work by Contractor, its employees, agents or Subcontractors or their employees, including but not limited to the use of any equipment or material furnished by Owner, or

"the presence of Contractor, its employees, agents or Subcontractors or their employees on the premises of Owner,

"whether such claims, suits, damages, losses and liabilities are based upon or result in whole or in part from the active or passive negligence of Owner, its employees or agents, or Owner's strict liability in tort, breach of warranty, breach of contract, duty to indemnify or any other basis or cause whatsoever whereby Owner might be held liable; provided, however, that the foregoing shall not be construed to be an agreement to indemnify Owner against liability for damages caused by or resulting from the sole negligence of Owner, its agents or employees, under circumstances whereby said agreement would be in violation of Michigan Public Act 1966, No. 165, Section 1 (M.C.L.A. Section 691.991), if applicable, it being the intent of the foregoing provisions to absolve and protect Owner from, and to indemnify Owner against, any and all liability and loss by reason of the premises except to the limited extent prohibited by Michigan Public Act 1966, No. 165, Section 1, if applicable."

[3] Paragraph 23 provides as follows:

"*INSURANCE AND BONDS:* Contractor and all Subcontractors, at their own expense, shall procure and maintain with respect to the work any and all bonds and policies of insurance which may be required by Owner and which shall be in such form and issued by such company or companies satisfactory to Owner, and prior to commencement of work hereunder, shall secure and deliver to Owner Certificates of Insurance evidencing at least the following insurance coverage:

Defendant National Steel was added as an additional insured to K & D's insurance policy with Sentry by an endorsement effective October 1, 1980. The endorsement purported to include defendant in the policy with respect to all liability of defendant arising out of the operations performed by K & D, including liability arising out of its ownership or control of the premises.[4]

In its complaint against defendant, Sentry claimed that it had no duty to defend or provide coverage to defendant because any liability arose out of defendant's sole negligence. Although defen-

"(a) Workmen's Compensation and Employer's Liability Insurance, according to applicable statutory requirements.

"(b) Contractor's Comprehensive General Liability Insurance covering operations, automobiles and Subcontractors (including the contractual liability assumed under paragraph 22 above), with a minimum limit unless otherwise specified in the Purchase Order, applicable to Bodily Injury Liability and Property Damage Liability of:

$2,000,000 single limit.

CONTRACTOR SHALL MAKE OWNER AN ADDITIONAL INSURED UNDER CONTRACTOR'S COMPREHENSIVE GENERAL LIABILITY INSURANCE POLICY APPLICABLE TO THE WORK BY MEANS OF AN ENDORSEMENT TO THE POLICY IN THE FORM ATTACHED TO THE CONTRACT SIGNED BY THE INSURER, A SIGNED DUPLICATE OF WHICH SHALL BE FURNISHED TO OWNER WITH THE REQUIRED CERTIFICATES OF INSURANCE.

"All certificates of insurance from the insuring companies required to be furnished to Owner hereunder shall include the following clause: 'At least ten (10) days' advance notice shall be given in writing to *National Steel Corporation, Weirton, West Virginia, 26062 Attention: Insurance Department,* prior to cancellation, termination, or any alteration of the policy or policies evidenced by this certificate."

[4] The Additional Insured Endorsement provides in part as follows:

"The 'Persons Insured' provisions is *[sic]* amended to include as an 'insured' National Steel Corporation, hereinafter call 'additional insured', with respect to all liability of the additional insured arising out of or in any way in connection with operations performed for the additional insured by the named insured or any sub-contractor of the named insured at the location designated above, including but not limited to liability of the additional insured arising out of its general supervision, if any, of such operations with respect to safety or otherwise, or arising out of its ownership or control of the premises on which such operations are performed."

dant raised a number of affirmative defenses to Sentry's complaint, including that it was not solely negligent, both sides agreed for purposes of the summary judgment motions that, assuming defendant was soley negligent, the only issue before the court was whether the insurance policy was void as against the public policy expressed in MCL 691.991; MSA 26.1146(1). Sentry agreed that defendant was covered under the terms of the insurance policy if the policy was not void. In an opinion from the bench, the trial court held that the insurance policy between Sentry and National Steel was not void and unenforceable as against the public policy expressed in the statute.

In this appeal, we address the sole issue of whether the public policy of the state as expressed in MCL 691.991; MSA 26.1146(1) voids the insurance policy between Sentry Insurance and National Steel. We conclude that it does not.

MCL 691.991; MSA 1146(1) provides as follows:

"A covenant, promise, agreement or understanding in, or in connection with or collateral to, a contract or agreement relative to the construction, alteration, repair or maintenance of a building, structure, appurtenance and appliance, including moving, demolition and excavating connected therewith, purporting to indemnify the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the promisee or indemnitee, his agents or employees, is against public policy and is void and unenforceable."

Thus, an indemnitor is not liable for the indemnitee's negligence, unless the indemnitor is also negligent, regardless of contractual language to the contrary. *Peeples v Detroit,* 99 Mich App 285, 295; 297 NW2d 839 (1980).

The essence of Sentry's argument is that the

above statute voids not only an indemnity agreement in a construction or a maintenance contract which purports to indemnify the promisee for its sole negligence, but also any insurance contract, like the one in the present case, which was purchased pursuant to such an indemnity agreement. This argument, however, is contrary to the relatively clear language of the statute. The statute refers to and voids only indemnity agreements.

Sentry also relies upon the following language in *Peeples, supra,* for the proposition that it was contrary to public policy for the agreement between K & D and National Steel to provide that K & D would purchase a liability policy which would cover National Steel even against its own sole negligence:

"We have previously noted that the Legislature has declared it to be contrary to public policy in Michigan for anyone in the construction industry to make any agreement which would absolve him from liability for his sole negligence, declaring that any such agreement is void and unenforceable, MCL 691.991; MSA 26.1146(1). Any agreement whereby a subcontractor must procure insurance which includes coverage for the general contractor's sole negligence would contravene Michigan public policy as expressed by the statute and would be unenforceable." 99 Mich App 302-303.

However, we need not determine whether the above rule correctly states the law as we find it inapplicable to the case at bar. The Court in *Peeples* was faced with a situation where the subcontractor was under a contractual obligation to purchase liability insurance for the benefit of the contractor. The Court concluded that any contractual provision which required the subcontractor to procure an insurance policy which included coverage for the contractor's sole negligence con-

travened the public policy declared in MCL 691.991; MSA 26.1146(1) and was, therefore, unenforceable.

We are not faced with the question of the enforceability of such a contractual requirement. In the case a bar, the policy was procured by K & D. We are thus called upon to determine whether the policy, once procured, is enforceable. We conclude that it is.

There is no question that National Steel could have directly contracted with Sentry to obtain liability coverage for National's own negligence. Such a policy certainly would not be against public policy as the very purpose of insurance is to provide coverage to a policyholder for the policyholder's negligent actions.

Rather, what is against public policy, according to *Peeples, supra,* is a contractual obligation, in the context of construction or maintenance contracts, which requires one party to the contract to purchase insurance to cover the other party's sole negligence. Thus, public policy, assuming that *Peeples* was correctly decided, is concerned not with the existence of the insurance policy, but with who pays the premium.

We cannot see how the question of who should pay the premium, or the public policy surrounding that question, is of any concern to Sentry. Sentry collected its premium and now seeks to avoid liability under the contract because the wrong party paid this premium. Whether or not K & D could be required to pay the premium is a dispute between K & D and National Steel which may or may not provide K & D with a remedy against National Steel.

The decision of the trial court is affirmed. Cost to defendants.