578 A.2d 1202

**HEAT & POWER CORPORATION, et al.**

· **v.**

**AIR PRODUCTS & CHEMICALS, INC.**

**No. 91, Sept. Term, 1989.**

Court of Appeals of Maryland.

Sept. 12, 1990.

Motion for Reconsideration Denied
Oct. 9, 1990.

586

Robert L. Ferguson, Jr. (Michael N. Russo, Jr., Thieblot, Ryan, Martin & Ferguson, on brief) John L. Wood (Niles, Barton & Wilmer, on brief) (Benjamin R. Goertemiller, Susan M. Marzetta, Semmes, Bowen & Semmes, on brief), Baltimore, for petitioners.

Louis G. Close, Jr. (James R. Chason, Tricia D. O'Neill, Whiteford, Taylor & Preston, all on brief) Towson, for respondent.

Argued before ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS,* HOWARD S. CHASANOW ** (specially assigned) and CHARLES E. ORTH, Jr., (retired, specially assigned), JJ.

CHASANOW, Judge.

Respondent, Air Products & Chemicals, Inc. (Owner), produces gas for industrial use. In April, 1977, Owner entered into a contract with Petitioner, Heat & Power Corp. (Contractor), to construct a silencer building [1] at Owner's Sparrows Point plant. Owner designed and prepared all specifications for the building.

In July, 1987, an employee of Contractor, Ivor LaBarrie, was removing scaffolding from the silencer building roof

---

* Adkins, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Art. IV, § 3A, he also participated in the decision and the adoption of this opinion.

** Howard S. Chasanow, a judge of the Seventh Judicial Circuit, was specially assigned to the Court of Appeals at the time the case was argued. He was sworn in as a judge of the Court on January 17, 1990.

1. A silencer building is a structure which houses the assembly used to produce gases such as oxygen and nitrogen, muffling the noise inherent in that production process.

when the building exploded. LaBarrie was seriously injured. The dispute in this case is not about who caused the accident. No challenge was made to the circuit court's entry of summary judgment in favor of LaBarrie against Owner. That decision was based on a finding that LaBarrie's injuries were caused by Owner's sole negligence in the design of the building which rendered the building incapable of withstanding the pressures to which it was subjected. Owner makes no allegation in this Court that any negligence of Contractor, or anyone other than Owner, contributed to LaBarrie's injuries. Rather, the dispute concerns the interpretation of the extent of insurance coverage Contractor obtained for Owner, as well as the interpretation of the construction contract.

The relevant portion of Article 13 of the construction contract between Owner and Contractor states:

> The Contractor shall *indemnify* [Owner] ... and save and hold each of them harmless from any and all loss, liability, fine, penalty or other charge, cost or expense by reason of any claim, fine or penalty, or any action or suit for injury to, or death of any persons, including agents and employees, or for damage to property, including the property of [Owner] and/or the Owner and their respective representatives, assigns, and successors, *resulting from or arising out of or in connection with the performance of this Contract by Contractor* and Subcontractor selected by Contractor if any. *Contractor shall obtain appropriate insurance coverage with respect to such liability.* (Emphasis added.)

In addition, the bidding instructions for the construction contract, expressly incorporated into the contract, required Contractor to name Owner as an "additional insured" on the comprehensive general liability policy Contractor maintained with its insurance carrier, Petitioner General Accident Fire and Life Assurance Corp., Ltd. (Insurer). Following Contractor's request, Insurer added Owner to Contractor's general liability policy in an endorsement which provides:

In consideration of a flat charge of $25.00, it is agreed that the 'Persons Insured' provision is amended to include as insureds [Owner]. *The provisions of this endorsement apply only in connection with work performed by the named insured for [Owner].* (Emphasis added.)

Owner maintains that Article 13 of the contract is unambiguous and clearly requires Contractor to indemnify and to secure insurance coverage for all claims made against Owner at this construction site, including claims made against Owner as a result of its own negligence. Contractor agrees with the Owner's contention that the language is unambiguous, but contends that clearly Article 13 only requires indemnification and insurance for Owner's vicarious liability, i.e., indemnification for any claims made against Owner as a result of Contractor's negligence for which Owner may be held vicariously liable.

In its dispute with Insurer, Owner contends that Insurer is obligated to defend and indemnify Owner for Owner's own negligence by virtue of the endorsement in Contractor's general liability policy with Insurer. Insurer, however, argues that the insurance contract endorsement is limited to protecting Owner against liability for work performed by Contractor for Owner. They maintain this language unambiguously limits any coverage to Owner's vicarious liability as the result of Contractor's work. Various judges of the Circuit Court for Baltimore City faced with the issue of ambiguity in the instant case "resolved" the issue four separate times, issuing four separate motions rulings.

Owner sought a defense and indemnity from Insurer based on the endorsement in Contractor's insurance policy. When Insurer refused, Owner filed a third-party complaint both against Insurer based on the endorsement, and against Contractor based on the indemnification provision in the construction contract. Owner's motion for summary judgment against Insurer was granted. Insurer then filed a motion for reconsideration of the summary judgment entered in favor of Owner. This motion for reconsideration

was granted, and the order granting summary judgment in favor of Owner was vacated. Next, a series of summary judgment motions and cross motions between Owner and Contractor were filed, which ultimately ended with a partial summary judgment in favor of Contractor. In response to Owner's motion for reconsideration from this ruling, the court reversed itself, finding that material issues of fact were presented which should be resolved by a jury. Despite this ruling, Contractor and Insurer each filed yet another motion for summary judgment on essentially the same grounds as their previous motions. Owner opposed them as before. This time the court entered summary judgment in favor of Contractor and Insurer. Owner appealed to the Court of Special Appeals.

In an unreported opinion the Court of Special Appeals reversed the Circuit Court for Baltimore City holding that the matters were inappropriate for summary judgment. Contractor and Insurer petitioned this Court, and we granted certiorari.

## I. STANDARD FOR APPELLATE REVIEW OF SUMMARY JUDGMENTS GRANTED ON THE BASIS OF A CONTRACT INTERPRETATION

The parties differ as to the proper standard for appellate review of a judgment entered on a motion for summary judgment. Petitioners, Contractor and Insurer, contend that the proper standard of review of summary judgment is "clearly erroneous." They rely on subsection (c) of Maryland Rule 8–131, Scope of Review, which states:

(c) **Action Tried Without a Jury.**—When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses.

The clearly erroneous standard for appellate review in section (c) of this rule does not apply to a trial court's determinations of legal questions or conclusions of law based on findings of fact. *Davis v. Davis,* 280 Md. 119, 124, 372 A.2d 231, 233, *cert. denied,* 434 U.S. 939, 98 S.Ct. 430, 54 L.Ed.2d 299 (1977). A trial court determines issues of law when granting summary judgment.

Petitioners also rely on the child custody determination in *Sewell v. Sewell,* 218 Md. 63, 145 A.2d 422 (1958). In *Sewell,* this Court employed the clearly erroneous standard on review notwithstanding the fact that the trial court decided the case primarily on depositions, as well as the recorded testimony of a witness taken before an Examiner. Our review of the trial court's decision in *Sewell,* however, was very different from a review of a summary judgment motion.

In granting a motion for summary judgment, the trial court makes rulings as a matter of law, resolving no disputed issues of fact from the record. In *Sewell,* the trial court used the depositions and the record before the Examiner to resolve factual disputes and make factual determinations based on recorded testimony. *Sewell* involves a judgment following a court trial utilizing testimony from depositions and testimony taken before the Examiner. "Clearly erroneous" was the proper standard for review of a judgment following a court trial.

Respondent Owner contends, and we agree, that the standard for appellate review of a trial court's grant or denial of a motion for summary judgment is whether the trial court was legally correct. A trial court decides issues of law, not fact, when granting summary judgment. Maryland Rule 2–501; *King v. Bankerd,* 303 Md. 98, 111, 492 A.2d 608, 614 (1985). Even where the underlying facts are undisputed, if the undisputed facts are susceptible of more than one permissible factual inference, the choice between those inferences should not be made as a matter of law, and summary judgment should not be granted. *Id.* In reviewing a summary judgment, an appellate court has the same

information from the record and decides the same issues of law as the trial court. It follows then that the proper standard for reviewing the granting of a summary judgment motion should be whether the trial court was legally correct. *Honaker v. W.C. & A.N. Miller Dev. Co.*, 278 Md. 453, 458 n. 3, 365 A.2d 287, 290 n. 3 (1976); *Lynx, Inc. v. Ordnance Products, Inc.*, 273 Md. 1, 8, 327 A.2d 502, 509 (1974); *Brewer v. Mele*, 267 Md. 437, 441, 298 A.2d 156, 159 (1972).

## II. INDEMNITY PROVISION IN THE CONTRACT

■ Article 13 of the contract required Contractor to indemnify Owner for any liability "resulting from or arising out of or in connection with the performance of this contract by Contractor. . . ." This provision cannot be construed as indemnifying the Owner against its own sole negligence. Any such construction would render the provision against public policy and void pursuant to Maryland Code (1974, 1989 Repl.Vol.), Courts & Judicial Proceedings Article, § 5–305. That section provides:

> A covenant, promise, agreement or understanding in, or in connection with or collateral to, a contract or agreement relating to the construction, alteration, repair, or maintenance of a building, structure, appurtenance or appliance, including moving, demolition and excavating connected with it, *purporting to indemnify the promisee against liability for damages arising out of bodily injury to any person or damage to property caused by or resulting from the sole negligence* of the promisee or indemnity, his agents or employees, *is against public policy and is void and unenforceable.* This section does not affect the validity of any insurance contract, workmen's compensation, or any other agreement issued by an insurer. (Emphasis added.)

As this statute states and as we construed it in *Bethlehem Steel v. G. C. Zarnas & Co.*, 304 Md. 183, 498 A.2d 605 (1985), any covenant, promise, agreement, or understanding

in a construction contract which purports to indemnify the promisee against liability for damages caused by the promisee's *sole* negligence is rendered void and unenforceable by Cts. & Jud.Proc. Art., § 5–305. *Id.* at 195, 498 A.2d at 611. If, on the other hand, "a particular contract provision or sentence can properly be construed as reflecting two agreements, one providing for indemnity if the promisee is solely negligent and one providing for indemnity if the promisee and promisor are concurrently negligent, only the former agreement is voided by the statute." *Id.*

■ Even if Cts. & Jud.Proc. Art. § 5–305 was not applicable, Article 13 of the contract is not sufficiently clear and unequivocal to indemnify Owner against its own negligence. In *Crockett v. Crothers*, 264 Md. 222, 227, 285 A.2d 612, 615 (1971), this Court held that "contracts will not be construed to indemnify a person against his own negligence unless an intention to do so is expressed in those very words or in other unequivocal terms." Since the contract did not expressly or unequivocally indemnify Owner against its own negligence, the circuit court judge was correct in ruling as a matter of law that Contractor had no contractual duty to indemnify Owner.

■ Owner next contends that even if Contractor had no contractual obligation to indemnify Owner against its own negligence, Contractor did have a contractual duty to provide liability insurance which would insure Owner against its own negligence. We need not address the issue of whether Cts. & Jud.Proc. Art. § 5–305 voids a provision in a construction contract requiring the promisor to obtain an insurance policy which would indemnify the promisee against its sole negligence.[2] In the instant case, Article 13 of the contract required Contractor "to obtain insurance coverage *for such liability* " (Emphasis added). The circuit court was legally correct in holding that "such liability,"

---

**2.** *See Bethlehem Steel v. G. C. Zarnas & Co.,* 304 Md. 183, 498 A.2d 605 (1985), dissenting opinion, Rodowsky, J. A promise to obtain insurance is different from a promise to indemnify directly.

when read in the context of this contractual provision, means the liability of Contractor to Owner under the indemnification provision. In contracting to provide insurance for "such liability," the Contractor agreed to provide insurance coverage co-extensive with its liability to Owner. Since Contractor did not contract to indemnify Owner against its own negligence, Contractor did not contract to insure Owner against its own negligence.

■ There are additional contractual provisions which Owner contends preclude summary judgment in favor of Contractor. The "Instructions to Bidders," which were expressly incorporated into the contract, required the Contractor to have Owner named as an "additional insured" on certain listed insurance coverage.

The Instructions to Bidders stated:

[Owner] shall be made an additional insured on all of the above contracts ... and shall be given 30 days notice in the event of cancellation of any policy. Certificates evidencing this coverage shall be forwarded to [Owner] prior to commencing work under the Contract.

Owner was made an "additional insured" by endorsement on all of the enumerated policies, although there is now disagreement between Owner and Insurer as to the interpretation of the endorsements. Owner may be correct in asserting that the term "additional insured" is ambiguous; however, Contractor secured endorsements on each of the enumerated insurance coverages, and the unrebutted evidence was that the language in the endorsements was acceptable to Owner. Further, in response to a request for admissions, Owner acknowledged that it was made an additional "persons insured" on all policies of insurance obtained in accordance with that section of the contract. Contractor fulfilled the requirement of having Owner named as an "additional insured" by procuring endorsements on the named policies in language that was acceptable to Owner. Owner got what it asked for even though it may not have gotten what it wanted.

There was one issue not raised in any petition for certiorari, but alluded to in the briefs. A provision in the contract required the Contractor to obtain a waiver of subrogation of any worker's compensation liens against the Owner. The issue of failure to obtain the waiver of subrogation was not mentioned in the pleadings, and was never properly raised before the trial court. We, therefore, will not consider the issue and will reverse the judgment of the Court of Special Appeals and affirm the circuit court's entry of summary judgment in favor of Contractor.

### III. EXTENT OF INSURANCE COVERAGE UNDER THE CONTRACT

■ Although we need not address the issue of whether a provision in a construction contract requiring a promisor to provide insurance coverage for the promisee's sole negligence is voided by Cts. & Jud.Proc. Art. § 5–305, we must determine, when such an insurance policy is in fact procured, is it enforceable? A policy of insurance insuring Owner for Owner's own negligence obviously would not be against public policy. The primary purpose of a liability insurance policy is to provide coverage to a policy holder for the policy holder's own negligence. What may arguably be against public policy under the statute would be a provision in a construction contract requiring one party to purchase insurance to cover the other party's sole negligence. Thus, who contractually must pay the insurance premiums may raise a public policy issue, but an insurance policy once issued and paid for is valid even if the wrong party paid the premiums. Insurer collected a premium and issued an endorsement. It cannot avoid its contractual obligations by claiming that Contractor was not compelled to purchase the endorsement. *See Sentry Insurance Co. v. National Steel Corp.*, 147 Mich.App. 214, 382 N.W.2d 753 (1985); *Long Island Lighting Co. v. American Employers Insurance*, 517 N.Y.S.2d 44, 131 A.D.2d 733 (1987).

Contractor's obligations under the contract were only to provide insurance coverage to Owner for Owner's vicarious

liability, not for Owner's liability as a result of its own negligence. If, however, Contractor in fact procured insurance which provided broader liability coverage than it was obligated to provide under the construction contract, the insurance policy would be valid and insurer would be obligated to provide coverage purchased by Contractor. We note also that Cts. & Jud.Proc. Art. § 5–305 expressly provides "this section does not affect the validity of any insurance contract, workmen's compensation, or other agreement issued by an insurer."

We hold that the insurance endorsement in the instant case could insure owner against its own negligence. We do not hold that the endorsement does provide such coverage. The rule of construction that a "contract will not be construed to indemnify a person against his own negligence unless an intention to do so is expressed in those very words or in other unequivocal terms," *Crockett, supra,* does not apply to an insurance contract. The policy consideration against implying agreements to indemnify one for one's own negligence are inapplicable to liability insurance contracts which generally have as their primary purpose indemnification against one's own negligence. Also, one of the reasons why contracts to indemnify must be expressed in unequivocal terms is to protect the unwary or uninformed promisor. A liability insurer is rarely an unwary or uninformed promisor.

In interpreting a contract, the trial judge must first consider "the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution." *Pacific Indem. Co. v. Interstate Fire & Cas. Co.,* 302 Md. 383, 388, 488 A.2d 486, 488 (1985). Second, with this background, the judge examines the four-corners of the contract to determine if the contract is unambiguous. An ambiguity exists when, to a reasonably prudent person, the language used in the contract is susceptible of more than one meaning. *Truck Ins. Exchange v. Marks Rentals, Inc.,* 288 Md. 428, 433, 418 A.2d 1187, 1190 (1980). If the contract is ambiguous, the court must consider any extrin-

sic evidence which sheds light on the intentions of the parties at the time of the execution of the contract.

 In the instant case, Contractor had a comprehensive general liability policy with Insurer. Owner was added as an additional insured pursuant to an endorsement which provided:

> [T]he "person's insured" provision is amended to include as insureds [Owner]. The provisions of this endorsement apply only in connection with work performed by the named insured for [Owner].

The Court of Special Appeals held that the endorsement was ambiguous, and that there were factual disputes about the true intention of the parties which must be resolved by the trier of fact. Owner and Insurer both contend that the endorsement is unambiguous, but they disagree as to the unambiguous meaning of the endorsement. Owner contends that the endorsement provides Owner with complete liability coverage for all negligent acts committed on this construction site. Insurer contends the endorsement only provides coverage for negligent acts of the Contractor or its agents. We agree with the Court of Special Appeals that the endorsement is ambiguous, and that factual findings about the intention of the parties will have to be made by the trier of fact.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND REVERSED IN PART. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY AIR PRODUCTS & CHEMICALS, INC. AND GENERAL ACCIDENT FIRE AND LIFE ASSURANCE CORP., LTD.

ELDRIDGE, Judge, concurring in part and dissenting in part, in which COLE, J., concurs.

The majority does not address whether the Owner could enforce a contractual provision requiring the Contractor to obtain an insurance policy that would indemnify the Owner for the Owner's sole negligence. The majority opinion does

take the position that where such a new insurance policy or new endorsement is in fact procured, the Owner can reap the benefits of that insurance policy despite the prohibition embodied in Maryland Code (1974, 1989 Repl.Vol.), § 5–305 of the Courts and Judicial Proceedings Article. I disagree with this holding.

I.

The holding in this case makes it unnecessary for the majority to address whether the Owner could enforce a provision in a contract, under which the Contractor promises to obtain an insurance policy that indemnifies the Owner for the Owner's sole negligence. It will, however, be necessary for me to address this issue. I have little doubt that § 5–305 of the Courts and Judicial Proceedings Article would void such a provision.

As the majority observes, the Contractor can not, under § 5–305, be required to indemnify the Owner against the Owner's sole negligence. It follows that the Owner can not accomplish indirectly what it is forbidden to do directly. Whether the Contractor agrees to purchase a new insurance policy or endorsement to protect the Owner against its sole negligence, or promises to provide the indemnity directly, the Owner has achieved the same result. At no cost to itself, the Owner has used its bargaining leverage to force the Contractor to agree to a clause in a construction contract providing for indemnity against the results of the Owner's sole negligence. In either case, the public policy underlying § 5–305 would be frustrated.

This Court held in *Bethlehem Steel v. G. C. Zarnas & Co.*, 304 Md. 183, 498 A.2d 605 (1985), that the public policy embodied in § 5–305 is so strong that a Maryland Court will not enforce a contrary provision in a contract, executed in a state where such provisions are lawful, despite the general principle of *lex loci contractus*. The Court stated (304 Md. at 190, 498 A.2d at 608):

"This is not a situation where Maryland law is simply different from the law of another jurisdiction. Here, the General Assembly of Maryland has specifically addressed clauses in construction contracts providing for indemnity against the results of one's sole negligence, and has unequivocally told the Maryland judiciary that such a clause 'is void and unenforceable.' § 5–305 of the Courts and Judicial Proceedings Article. Moreover, in the same sentence of the statute, the General Assembly expressly stated that such indemnity provision 'is against public policy.' "

A promise by the Contractor to *insure* the Owner against the Owner's sole negligence clearly falls into the category of "clauses in construction contracts providing for indemnity against the results of one's sole negligence."

This is illustrated by a New Mexico case, *Amoco Production v. Action Well Service*, 107 N.M. 208, 755 P.2d 52 (1988). In that case, the Supreme Court of New Mexico affirmed the dismissal of an action in which an oil well owner had sought to enforce an indemnification agreement against a lessee. One of the lessee's employees had died, allegedly because of the owner's negligence, and the owner had settled with the decedent's estate. The owner asserted that the lessee was obligated to indemnify up to the amount of liability insurance which the lessee was required to purchase under the agreement. The Court disagreed, rejecting the owner's contention that a New Mexico statute similar to § 5–305 (although dealing specifically with oil and gas well construction) "was not intended to prevent a company from ultimately obtaining indemnity by insurance and insurance alone." 755 P.2d at 54.

In *Peeples v. City of Detroit*, 99 Mich.App. 285, 297 N.W.2d 839 (1980), the Court of Appeals of Michigan reversed a lower court order granting summary judgment in favor of a general contractor against a subcontractor, premised on the subcontractor's failure to provide "requisite" liability insurance on behalf of the general contractor. This insurance purportedly would have covered the general con-

tractor for damages it incurred by settling with a person who was injured because of the general contractor's sole negligence. In interpreting a Michigan statute similar to § 5–305, the Court reasoned (99 Mich.App. at 302–303, 297 N.W.2d at 846):

"We have previously noted that the legislature has declared it to be contrary to public policy in Michigan for anyone in the construction industry to make any agreement which would absolve him from liability for his sole negligence, declaring that any such agreement is void and unenforceable, M.C.L. § 691.991; M.S.A. § 26.1146(1). Any agreement whereby a subcontractor must procure insurance which includes coverage for the general contractor's sole negligence would contravene Michigan public lic policy as expressed by the statute and would be unenforceable."

*But cf. Sentry Insurance Co. v. National Steel Corp.*, 147 Mich.App. 214, 382 N.W.2d 753 (1985).

There are a few states where intermediate appellate courts, interpreting statutes like § 5–305, have reached a contrary conclusion. In some of those states, however, the courts have viewed the public policy underlying the statutes differently from the position taken by this Court. Two states where a contrary result was reached are Florida and Ohio. *See Cone Bros. Contracting v. Ashland–Warren*, 458 So.2d 851 (Fla.App.1984), *review denied*, 464 So.2d 554 (Fla.1985); *Brzeczek v. Standard Oil Co*, 4 Ohio App.3d 209, 212–213, 447 N.E.2d 760, 764 (1982). Nevertheless, courts in Florida and Ohio, unlike this Court in *Zarnas*, have been willing to apply another forum's law and enforce provisions in construction contracts requiring one party to indemnify another party for the other party's sole negligence. *See Jemco, Inc. v. United Parcel Service, Inc.*, 400 So.2d 499, 502 (Fla.App.1981), *review denied*, 412 So.2d 466 (Fla.1982); *Jarvis v. Ashland Oil, Inc.*, 17 Ohio St.3d 189,

478 N.E.2d 786 (1985).[1]

As this Court emphasized in *Bethlehem Steel v. G. C. Zarnas & Co., supra,* 304 Md. at 190, 498 A.2d at 608, the General Assembly in § 5–305 of the Courts and Judicial Proceedings Article unequivocally instructed the courts that clauses in construction contracts providing for indemnity against the results of one's sole negligence are "unenforceable." The General Assembly went on to declare expressly that these provisions are "against public policy." When it enacted § 5–305, the General Assembly was undoubtedly aware that parties to construction contracts, who promised to indemnify others for the others' sole negligence, usually purchased insurance to cover this risk. I can not imagine that the General Assembly would so emphatically enunciate a public policy, while at the same time intend that the public policy could be circumvented in the usual case by requiring the purchase of liability insurance.

In his dissenting opinion in *Zarnas,* Judge Rodowsky opined that one purpose of § 5–305 was " 'to prevent the practice of requiring contractors or subcontractors to assume liability for the negligence of others, thereby increasing their insurance costs and thus the costs of construction....' " *Zarnas, supra,* 304 Md. at 213, 498 A.2d at 620 (Rodowsky, J., dissenting) (quoting *Quevedo v. City of New York,* 56 N.Y.2d 150, 155–156, 451 N.Y.S.2d 651, 653, 436

---

**1.** An intermediate appellate court in Illinois, like the cases in Florida and Ohio, has also reached a contrary result. *See Bosio v. Branigar Organization, Inc.,* 154 Ill.App.3d 611, 107 Ill.Dec. 105, 107–08, 506 N.E.2d 996, 998–999 (1987). But cases in the Illinois intermediate appellate courts are in conflict as to the strength of the Illinois public policy underlying the statute. *Compare Champagnie v. W. E. O'Neil Const. Co.,* 77 Ill.App.3d 136, 143, 32 Ill.Dec. 609, 614, 395 N.E.2d 990, 995 (1979) (contrary to the position taken by this Court in *Zarnas* ) *with Lyons v. Turner Const. Co.,* 195 Ill.App.3d 36, 141 Ill.Dec. 719, 551 N.E.2d 1062, 1065–1066 (1990) (acknowledging the conflict of authority in Illinois and choosing to follow this Court's resolution in *Zarnas* ).

Finally, the intermediate appellate court in Arizona, without any analysis, simply concluded that the Arizona statute had "no application to an agreement as to which an insurer will be liable for the negligence of a party." *U.S. Fid. & Guar. v. Farrar's Plumbing,* 158 Ariz. 354, 355, 762 P.2d 641, 642 (Ariz.App.1988).

N.E.2d 1253, 1255 (1982)). If a purpose of § 5–305 is to limit insurance costs, and thus construction costs, then the section must be read to prohibit agreements whereby contractors or subcontractors agree to purchase insurance to provide indemnity for the sole negligence of others.

For these reasons, I believe it is clear that the Owner could not enforce a contractual provision requiring the Contractor to procure an insurance policy that would indemnify the Owner for the results of its solely negligent acts. I will now address the issue that the majority did decide.

## II.

The majority holds that § 5–305 does not prevent a solely negligent party from collecting on a new liability insurance policy or new endorsement which the other party was forced to obtain. The majority reasons that "who contractually must pay the insurance premiums may raise a public policy issue, but an insurance policy once issued and paid for is valid even if the wrong party paid the premiums." I maintain that in order to effectuate the strong public policy underlying § 5–305, that section must be read to bar an owner from reaping the benefits of a contractor's promise to insure the owner for the owner's sole negligence. Otherwise, an owner could simply demand that the insurance policy be procured or the owner would not enter the contract.

The majority's reliance on the final sentence in § 5–305 is misplaced. That sentence provides: "This section does not affect the validity of any insurance contract...." In interpreting this language, which has never been addressed previously by this Court, we should read it "in a way that will carry out the goal or objective the legislature was seeking to accomplish." *Baltimore City Police v. Andrew*, 318 Md. 3, 12, 566 A.2d 755, 759 (1989). *See Kaczorowski v. City of Baltimore*, 309 Md. 505, 513–516, 525 A.2d 628, 632–633 (1987).

In § 5–305, the General Assembly forbade, on public policy grounds, enforcement of contractual agreements whereby parties, such as the Owner in this case, "would be indemnified for damages resulting from [their] sole negligence." *Bethlehem Steel v. G. C. Zarnas & Co., supra,* 304 Md. at 193, 498 A.2d at 610. It would not be consistent with this legislative objective to interpret the final sentence of § 5–305 as meaning that an owner can collect on insurance obtained under a provision requiring a contractor to procure insurance covering the owner's sole negligence. If it can, the public policy underlying the statute will be frustrated.

In my view, the final sentence in § 5–305 means that an insurance policy already in existence at the time negotiations commence is not invalidated and is fully effective, even if a solely negligent party gains the benefit. But any insurance policy that is a product of construction contract negotiations, whereby one party agrees to pay for indemnification of another for the other's sole negligence, should not be enforced to benefit the solely negligent party.

Other courts, interpreting similar statutory provisions, have construed them in ways consistent with state public policy objectives. In *Amoco Production v. Action Well Service, supra,* 755 P.2d at 55, the Supreme Court of New Mexico concluded that the phrase "[t]his provision shall not affect the validity of any insurance contract . . ." only "applies to insurance purchased by the indemnitor to protect *its* interests, and not the interests of the indemnitee."

In *Quevedo v. City of New York, supra,* 56 N.Y.2d at 156 n. 3, 451 N.Y.S.2d at 653 n. 3, 436 N.E.2d at 1255 n. 3, the Court of Appeals of New York noted that a proviso that the state statute " 'shall not affect the validity of any insurance contract . . .' " "merely ensures that the contractor will not lose insurance coverage simply because the coverage may extend to liability sought to be imposed under an unenforceable agreement." The Court emphasized that "the existence of insurance would not save an indemnification clause otherwise unenforceable under [the statute]."

In *Babineaux v. McBroom Rig Bldg. Service, Inc.*, 806 F.2d 1282, 1284, *mandate issued*, 817 F.2d 1126 (5th Cir. 1987), the United States Court of Appeals for the Fifth Circuit interpreted a Louisiana statute similar to § 5–305 (but specifically governing certain well and mineral drilling projects). The statute expressly invalidated contractual provisions "requir[ing] ... 'additional named insured endorsements, or any other form of insurance protection which would frustrate or circumvent the prohibitions of this Section....'" The statute also provided, however, that it did "not affect the validity of any insurance contract, except as otherwise provided in this Section...." La.Rev.Stat.Ann. § 9:2780 (1965, 1990 Cum.Supp.). The contractor in *Babineaux*, like the one in today's case, actually procured an insurance policy naming the owner as an additional insured. The court rejected the owner's contention that the statute "has no effect on its rights in the insurance contract with [the insurer]," holding (806 F.2d at 1284):

> "We are persuaded that it would frustrate the purposes of the Act to allow [the owner] to obtain from [the insurer] the indemnification it cannot obtain from [the contractor]."

The endorsement in the present case, to the extent that it indemnifies the Owner for the results of the Owner's sole negligence, was not an existing insurance provision. It was procured by the Contractor to fulfill a requirement of the present construction contract. Section 5–305 should be construed as preventing the Owner from enjoying the benefits of that endorsement. Under the majority's holding, however, owners will be able to frustrate the policy underlying § 5–305 by requiring contractors to procure insurance policies, even if that requirement is unenforceable. Once the insurance is procured, owners need not worry how it was obtained, and the courts will not inquire.

I would reverse the entire judgment of the Court of Special Appeals, and instruct that court to affirm the summary judgments entered by the Circuit Court for Baltimore City.