**In re MERRY–GO–ROUND ENTERPRISES, INC., Mgr Distribution Corporation, and Mgrr, Inc., and Almeda Chess King, Inc., et al., Debtors.**

**THE BINSWANGER COMPANIES, Plaintiff,**

**v.**

**MERRY-GO-ROUND ENTERPRISES, INC., et al., Defendants.**

**Bankruptcy Nos. 94–5–0161–SD to 94–5–0163–SD, 94–5–3774–SD. Adversary No. 96–5448-SD.**

United States Bankruptcy Court, D. Maryland, at Baltimore.

March 17, 1998.

Cynthia L. Leppert, Neuberger, Quinn, Gielen, Rubin & Gibber, P.A., Baltimore, MD, for Deborah Hunt Devan.

Howard A. Rubenstein, Adelberg, Rudow, Dorf, Hendler & Sameth, L.L.C., Baltimore, MD, for Keen Realty Consultants, Inc.

Lorin H. Bleecker, Morton A. Faller, Meyer, Faller, Weisman & Rosenberg, P.C., Washington, DC, Paul R. Rosen, Leslie B. Baskin, Spector, Gadon & Rosen, Philadelphia, PA, for Plaintiff.

Karen H. Moore, Asst. U.S. Trustee, Office of U.S. Trustee, Baltimore, MD, for U.S. Trustee.

## MEMORANDUM OPINION DISMISSING COUNT I, DISMISSING COUNT II AS TO KEEN, AND DENYING DISMISSAL OF COUNT II AS TO TRUSTEE

E. STEPHEN DERBY, Bankruptcy Judge.

This dispute is whether plaintiff, The Binswanger Companies ("Binswanger"), is entitled to a real estate broker's commission on the $19,000,000 sale of Debtor's warehouse and distribution center by the Chapter 7 Trustee.

## I. BACKGROUND.

During the last weeks of the unsuccessful, Chapter 11 reorganization case of the debtor, Merry–Go–Round Enterprises, Inc. ("MGRE"), Binswanger alleges that it negotiated with the debtor in possession an exclusive agency agreement for the sale of MGRE's warehouse and distribution center. Binswanger further alleges it was advised that MGRE's board of directors had approved Binswanger as exclusive agent for sale of the center, that it marketed the center, and that it produced a letter of intent from The May Department Stores Company ("The May Company") to purchase the premises for $15,000,000 in cash. However, neither MGRE nor Binswanger sought or obtained court approval for MGRE to retain Binswanger before the court granted a motion to convert this case to Chapter 7.

After her appointment, the Chapter 7 Trustee applied to this court for authorization to retain Keen Realty Consultants, Inc. ("Keen") as special real estate consultant, *inter alia,* to list and market MGRE's warehouse and distribution center exclusively. The court authorized the Trustee to retain Keen, and approved the Real Estate Retention Agreement between Keen and the Trustee (the "Keen Agreement"), without opposition.

Binswanger moved for reconsideration of the order authorizing the Trustee's retention of Keen. It asserted that it had not received notice of the estate's intent to retain Keen and that it should be recognized and paid as broker for procuring The May Company and two other named prospects. The court denied Binswanger's motion for reconsideration. It concluded that Binswanger was not entitled to notice under Bankruptcy Rule 2014 and that Binswanger did not have standing to challenge the Trustee's right to retain the real estate broker of her choice. The court explained:

> The gist of Binswanger's motion is that it did work for the Debtor that the Trustee is now employing Keen Realty to do. Binswanger did not receive court approval for any work it might have done for Debtor. Thus, by not adhering to 11 U.S.C. § 327, Binswanger is not entitled to compensation for its services. *Matter of Samford,* 125 B.R. 230, 233 (E.D.Mo.1991) (A professional performing services for a debtor is not entitled to any compensation if the employment has not been approved by the court). "The purpose of the rule requiring prior court authorization of a professional's appointment is to eliminate volunteerism and thus aid the court in controlling estate administrative expenses." *In re Haley,* 950 F.2d 588, 590 (9th Cir.1991). Accordingly, Binswanger cannot argue that it has a *quantum meruit* claim to circumvent the requirements of § 327.

At the time Binswanger's motion for reconsideration was filed, the Trustee had not given notice or filed an application for approval of a proposed sale of the warehouse and distribution center to The May Company or to any other party. This fact is significant because one effect of granting Binswanger's

motion for reconsideration would have been to limit the Trustee to offers solicited by Binswanger. It was the court's view that the Chapter 7 Trustee had the discretion to select a real estate broker of her choice, without being bound by negotiations of MGRE, as debtor in possession, that occurred before this case was converted from Chapter 11.

This matter was appealed, but the U.S. District Court has stayed the appeal pending rulings by this court in this adversary proceeding. Civ. No. JFM–96–2311 (D.Md.).

## II. THE COMPLAINT.

This adversary complaint was brought by Binswanger to obtain a judgment against the Chapter 7 estate for the commissions to which it believes it is entitled, based on its interpretation of the Keen Agreement. Binswanger also seeks to have the Chapter 7 Trustee held in contempt for acting in bad faith and to have the funds that were paid to Keen disgorged and paid to Binswanger.

Count I is grounded in contract. Therein Binswanger alleges that the Trustee intentionally breached the Keen Agreement and is in contempt for violating Keen's retention order. Under Count I Binswanger seeks a judgment for $355,000, representing the commissions to which it claims it is entitled under the Keen Agreement.

In Count II Binswanger alleges entitlements under state law, and it seeks disgorgement of commissions paid to Keen. It requests judgment for $570,000.

## III. THE MOTIONS TO DISMISS.

The Trustee has moved to dismiss the complaint on three grounds, and Keen has adopted the Trustee's motion. First, the Trustee contends that the complaint is barred by principles of *res judicata* because the issues were resolved by this court's denial of Binswanger's motion to reconsider Keen's retention order; and the matter is the subject of an appeal pending before the U.S. District Court where it should be finally decided. Second, she alleges that even if Binswanger is not precluded from bringing this complaint by *res judicata* principles, Binswanger is not entitled to compensation because its employment was never approved by the court. Finally, she contends that even if Binswanger could potentially claim a commission, the Complaint should be dismissed because Binswanger is not entitled to a commission under the terms of the Keen Agreement.

## IV. DISCUSSION.

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, "complaints should be liberally construed and viewed in the light most favorable to the Plaintiff." *In re Marino*, 115 B.R. 863, 867 (Bankr.D.Md.1990). Therefore, the court must assume all facts to be as alleged in the complaint, and it will only grant a motion to dismiss if such facts would be insufficient to support a claim upon which relief can be granted. *Id.* The Keen Agreement is identified in the complaint, and it is attached as part of Exhibit D. Complaint at ¶ 25. Therefore, for purposes of this motion the court will assume that the Keen Agreement is the agreement included in Exhibit D.

### A. *Res Judicata.*

The doctrine of *res judicata* bars relitigation of issues previously decided. *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414–15, 66 L.Ed.2d 308 (1980). *Res judicata* principles apply in bankruptcy. *Brown v. Felsen*, 442 U.S. 127, 131–32, 99 S.Ct. 2205, 2209–10, 60 L.Ed.2d 767 (1979); *Turshen v. Chapman*, 823 F.2d 836, 839 (4th Cir.1987). Res judicata bars the relitigation of claims that were decided in a prior action between the parties, or which could have been brought in the prior action. *Sea–Land Services, Inc. v. Gaudet*, 414 U.S. 573, 578, 94 S.Ct. 806, 811–12, 39 L.Ed.2d 9 (1974); *Adkins v. Allstate Ins. Co.*, 729 F.2d 974, 976 (4th Cir.1984); *In re Barrow*, 87 B.R. 879, 883 (Bankr.E.D.Va.1988). A party is barred from relitigating a cause of action if there has been a final judgment on the merits in a prior suit, if the causes of action in both the earlier and the later suit are identical, and if each suit involves the same parties or their privies. *Meekins v. United Transp. Union*, 946 F.2d 1054, 1057 (4th Cir.1991). The parties to the prior action and their privies are

precluded from raising for a second time a cause of action that either was "offered and received to sustain or defeat the claim or demand" or which "might have been offered for that purpose." *Sea–Land Services,* 414 U.S. at 579, 94 S.Ct. at 812; *Adkins,* 729 F.2d at 976.

■ The Trustee's *res judicata* argument is rejected. While Binswanger did raise the issue of its entitlement to a commission in its motion for reconsideration of the order approving Keen's retention, this issue was not relevant to Keen's retention; it was not properly before the court; and it was not decided by the court. The court determined only the issue of whether Binswanger had standing to object to MGRE's retention of Keen. The court did not address Binswanger's potential entitlement to a commission under the Keen Agreement or as a procuring broker if the Trustee accepted an offer from a purchaser procured by Binswanger. Therefore, while the parties are identical and there was a judgment on the merits of the issue before the court, the prior decision on the motion for reconsideration of Keen's retention was not on the merits of the cause of action raised by the instant complaint. The court did not receive Binswanger's arguments concerning its entitlement to a fee to sustain or defeat its claim. *See Sea–Land Services,* 414 U.S. at 579, 94 S.Ct. at 812.

In addition, material events on which the instant complaint is based had not occurred at the time the previous order denying reconsideration was entered. The event triggering Binswanger's claim to a commission was the execution of a presently enforceable contract of sale of MGRE's warehouse and distribution center to The May Company. *See* Md.Code Ann., Real Prop. § 14–105(1996)[1];

*Storch v. Ricker,* 57 Md.App. 683, 697, 471 A.2d 1079 (1984). This event was not alleged to have occurred until August 19, 1996, at the earliest.[2] *Complaint* at ¶ 33. The motion for reconsideration was denied earlier on June 5, 1996. Dkt. P. 4994. Because the sale occurred subsequent to the denial of Binswanger's motion for reconsideration, the order denying Binswanger's motion cannot be said to constitute *res judicata* as to causes of action arising from consummation of the sale.

■ One portion of the complaint, however, sets forth a cause of action already ruled upon by this court in denying the motion for reconsideration, namely, the element of Count II that requests the court to order Keen to disgorge its fees. The disgorgement request is only one prong of Count II, however. Binswanger's primary request is for a judgment for the commissions to which Binswanger is entitled under Maryland law as a procuring broker. Therefore, while the dismissal of Count II in its entirety is not warranted, the court will dismiss the prayer that Keen be ordered to disgorge its commission, as barred in this court by *res judicata,* albeit subject to resolution of Binswanger's appeal of Keen's retention order that is pending before the U.S. District Court.

### B. *Count I—Contract Claim.*

■ Count I will be dismissed because the terms of the Keen Agreement do not either give Binswanger standing to enforce rights under it or afford Binswanger a substantive right to payment. Binswanger was not a party to the contract. Therefore, in order to have standing to enforce the contract, Binswanger would have to be a third party

---

1. Section 14–105 of the Real Property Article of the Maryland Annotated Code provides:

 In the absence of special agreement to the contrary, if a real estate broker employed to sell, buy, lease, or otherwise negotiate an estate, or a mortgage or loan secured by the property, procures in good faith a purchaser, vendor, lessor, lessee, mortgagor, mortgagee, borrower, or lender, as the case may be, and the person procured is accepted by the employer and enters. into a valid, binding, and enforceable written contract, in terms acceptable to the employer, of a sale, purchase, lease, mortgage, loan, or other contract, as the

case may be, and the contract is accepted by the employer and signed by him, the broker is deemed to have earned the customary or agreed commission. He has earned the commission regardless of whether or not the contract entered into is performed, unless the performance of the contract is prevented, hindered, or delayed by any act of the broker.

2. The Trustee moved to approve a sale to The May Company on July 24, 1996, and the order approving and authorizing the sale was entered on August 19, 1996. Dkt. Ps. 5187, 5227.

beneficiary to the contract. *Marlboro Shirt Co., Inc. v. American Dist. Telegraph Co.,* 196 Md. 565, 569, 77 A.2d 776 (1951).

The name of an intended third party beneficiary is normally listed in the contract. *Wong v. Aragona,* 815 F.Supp. 889, 892 (D.Md.1993). An unnamed person may be a third party beneficiary only if it "clearly appear[s] that the parties intended to recognize him as the primary party of interest and as a privy to the promise." *Geo. Byers Sons v. East Europe Import Export, Inc.,* 488 F.Supp. 574, 584 (D.Md.1980). "In order to recover it is essential that the beneficiary shall be the real promisee; i.e that the promise shall be made to him in fact, though not in form." *Gray & Son, Inc. v. Maryland Deposit Ins. Fund Corp.,* 83 Md.App. 584, 592, 575 A.2d 1272 (1990). This determination is to be made based on "the intention of the contract, revealed by its terms, in light of the surrounding circumstances...." *Hamilton and Spiegel, Inc. v. Board of Educ. Of Montgomery County,* 233 Md. 196, 199, 195 A.2d 710 (1963).

Interpretation of a contract is a question of law for the court to determine unless the terms of the contract are ambiguous. *Shapiro v. Massengill,* 105 Md.App. 743, 754–755, 661 A.2d 202 (1995). A contract is ambiguous when, "to a reasonably prudent person, the language used in the contract is susceptible of more than one meaning." *Board of Incorporators of African Methodist Episcopal Church, Inc. v. Mt. Olive African Methodist Episcopal Church of Fruitland, Inc.,* 108 Md.App. 551, 578, 672 A.2d 679 (1996) (*quoting Heat & Power Corp. v. Air Prods. & Chems., Inc.,* 320 Md. 584, 596, 578 A.2d 1202 (1990)).

The Keen Agreement is not ambiguous concerning who was intended to be the primary party in interest. The provisions relevant to Binswanger's claim are contained in section II(C). It provides:

 C. *Fee:* Keen's fees due hereunder shall be computed and paid as follows:

 1. When and if Interim Trustee completes a transaction pertaining to the sale of the Distribution Center, then subject to the provisions set forth below, Keen shall receive as compensation an amount, equal to two percent (2%) of the Gross Proceeds, in full, simultaneously with the closing or other consummation of the transaction; provided, however,

 i) that in the event that there is a procuring third party broker, Keen shall be authorized to share its fee with such broker and the total compensation payable by Interim Trustee shall increase by an additional one percent (1%) of Gross Proceeds; and

 ii) That to the extent the transaction is in whole or in part with one of the entities listed on Schedule 1 attached, then Keen's fee shall be reduced to one percent (1%) of the Gross Proceeds on the first sixteen million five hundred thousand dollars (16,500,-000.00) of Gross Proceeds and two percent (2%) of any excess Gross Proceeds; and

 iii) That to the extent that the transaction involves the sale of Personal Property, including the material handling equipment, then in computing Keen's fee the Gross Proceeds shall be reduced by an amount not to exceed $9 million, but in an amount equal to what the Interim Trustee and the purchaser have allocated for the Personal Property.

 2. *The term "Gross Proceeds" as used herein shall include the sum of:*

 a) The total cash consideration transferred to or for the benefit of Interim Trustee; and

 b) Gross Proceeds shall not be affected by the costs of advertising, Interim Trustee's legal fees, breakup fees, Keen's approved expenses nor any closing costs and/or adjustments and/or payments of whatever kind to lienholders or secured parties.

Keen Agreement, at 3.

This section starts with the statement that "Keen's fees due hereunder shall be computed and paid as follows:...." The Keen Agreement does not require either Keen or the Estate to pay a third party procuring

broker. *Id.* Section II(C)(1)(i) authorizes Keen to share its fee with a procuring third party broker, if one is hired by Keen, and requires the Interim Trustee to pay Keen an additional 1% if Keen does so. *Id.* This provision does not require Keen to share its fee with anyone, nor does it require that the Trustee pay anyone other than Keen. While Section II(B)(10) of the Keen Agreement provides that "Keen may at its sole cost and expense hire local brokers to assist it in generating interests in the Distribution Center," there is no allegation that Keen hired Binswanger.

If the buyer is one of the entities on Schedule 1, Section II(C)(1)(ii) limits the amount due to Keen to 1% of the first $16.5 million of gross proceeds and 2% on the remainder. *Id.* at 3–4. Schedule 1 includes The May Company. However, nothing in this section or any other section in the Keen Agreement identifies Binswanger as the primary party in interest or as a promisee in fact. On the contrary, Section VI(C) of the Keen Agreement states that the agreement is to "inure to the benefit of the parties hereto." Therefore, the Keen Agreement does not evidence an intent to make Binswanger a primary party in interest, and Binswanger does not have standing to enforce the Agreement as a third party beneficiary.

Even if Binswanger were found to have standing as a third party beneficiary, there is nothing for it to enforce under the Keen Agreement. Sections II(C)(1)(i) and (ii) deal solely with the modifications of Keen's fee if it uses a third party procuring broker or if a buyer on Schedule 1 is the successful purchaser of MGRE's warehouse and distribution center. Binswanger has not alleged that Keen agreed to share its commission with Binswanger. By itself, section II(C)(1)(i) does not entitle Binswanger to a commission. Section II(C)(1)(ii) does not provide Binswanger with a cause of action merely because it limits the commission payable to Keen if one of the entities set forth in Schedule 1 is the buyer. The Keen Agreement simply does not address Binswanger's entitlement to a commission. Binswanger's allegation that Schedule 1 lists prospective purchasers pro-

cured by Binswanger does not alter this conclusion. Although Binswanger may have a claim against the bankruptcy estate based on the allegation that it procured the successful purchaser, such a claim is not based on the Keen Agreement. Therefore, Count I will be dismissed.

### C. *Count II—State Law Entitlement Claim.*

 Absent a special agreement to the contrary, the entitlement of a real estate broker to a commission is contingent on the broker being employed by the seller and on the purchaser being procured by the broker in good faith. Md.Code Ann., Real Prop. § 14–105 (1996). Maryland case law interpreting the obligation of an owner to pay a procuring broker is somewhat different from that governing the owner's obligation to pay a listing broker. While a procuring broker must establish that it was employed by the owner and that it was the procuring cause of the sale, it is more likely that employment of a procuring broker will be established by implication. *See Hogan v. Q.T. Corp.,* 230 Md. 69, 75, 185 A.2d 491 (1962) (when the owner allowed the broker to show the property to potential buyers, it impliedly contracted to use the broker as an agent for the purpose of that sale). Further, the requirement that the broker's actions be authorized by the seller may be satisfied by a subsequent ratification by the seller. *Id.* at 74, 185 A.2d 491; *Snedker v. Baltimore Brick Co.,* 198 Md. 499, 502, 84 A.2d 868 (1951).

In this case Binswanger alleges that MGRE informed it on January 25, 1996 that the debtor in possession's board had agreed to its retention as the exclusive broker. A written, executed agreement reflecting such approval was not alleged, nor was such employment approved by the court. The Chapter 7 Trustee, however, accepted an offer of The May Company, and the sale went to settlement. The Trustee's acceptance of the offer could constitute a ratification of Binswanger's actions on behalf of the estate. If so, and if Binswanger was the procuring cause of the sale, the estate may be liable for a commission to Binswanger. The Trustee may not take the benefit of Binswanger's

services in procuring a purchaser and also deprive Binswanger of a commission by negotiating the sale herself or through another broker. *Sanders v. Devereux*, 231 Md. 224, 231–232, 189 A.2d 604 (1963).

 The Trustee is correct when she asserts the general proposition that state law claims cannot be used to circumvent the requirements of 11 U.S.C. § 327. *In re Office Prods. of Am., Inc.*, 136 B.R. 675, 689 (Bankr.W.D.Tex.1992). Nevertheless, state law is not preempted when state and federal law are not inconsistent. *Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979). Federal bankruptcy law expressly conditions the collection of a professional's commissions under state law on the approval of the professional's employment by the bankruptcy court pursuant to 11 U.S.C. § 327. *Matter of Samford*, 125 B.R. 230, 233 (E.D.Mo.1991). The fact that a broker's employment must be approved by the court, however, does not dictate that prior court approval of all procuring brokers who submit bids to the estate is required. In this case court approval of the retention of a procuring broker might not have been appropriate until the Trustee determined that she would accept a bid offered by the procuring broker's client. *In re Laguna Hills Fin. Assocs.*, 93 B.R. 224, 226–227 (Bankr. C.D.Cal.1988), *aff'd* 125 B.R. 57 (9th Cir. B.A.P. 1989) (court need not approve employment of procuring broker until debtor agreed to employ broker by signing the contact of sale). Therefore, the fact that the court has not yet approved the employment of Binswanger does not prevent the court from doing so in the future, nor does it enable the Trustee to deny her liability for a commission to Binswanger if she has accepted a contract from a purchaser that Binswanger allegedly procured.

 The amount of a procuring broker's commission is also subject to court approval. 11 U.S.C. § 328. Such compensation should be considered pursuant to the application and notice process established by the Bankruptcy Code and Rules. While the Trustee may be exposed to a claim by Binswanger for some commission now that she has allegedly ratified Binswanger's actions by accepting an offer from The May Company, the Trustee is not bound by any agreement that Binswanger may have had with MGRE concerning the amount of its fee.

 Under Maryland law when no agreement has been reached, the court may imply a promise to pay the usual or customary commission, if such a custom can be established, or the reasonable value of the services if no such custom can be established. *Weinberg v. Desser*, 243 Md. 347, 357, 221 A.2d 66 (1966). The Keen Agreement could be used as evidence of what the fee should be. Alternatively, Binswanger and the Trustee could agree on a reasonable fee, subject to court approval. 11 U.S.C. § 328.

## V. CONCLUSION.

Count I of the complaint will be dismissed in its entirety because Binswanger cannot recover under the Keen Agreement. Binswanger was neither a party nor a third party beneficiary. Even if Binswanger had standing to enforce the Keen Agreement, the agreement does not promise anything to or for Binswanger. The specific provisions deal solely with the compensation of Keen.

The disgorgement claim in Count II against Keen will also be dismissed. The issue of disgorgement has already been litigated and is barred in this court by *res judicata*, subject to the pending appeal.

Count II will not be dismissed as to the Trustee. While Binswanger is precluded by principles of *res judicata* from requesting the court to disgorge Keen's fee, Binswanger has alleged a cause of action that it is entitled to a commission from the Trustee as a third party procuring broker pursuant to Maryland law.