**Robert Ollie KLOCK, Appellant,**

v.

**MILLER & LONG COMPANY,**
**et al., Appellees.**

**No. 99–CV–1135.**

District of Columbia Court of Appeals.

Argued Oct. 19, 2000.

Decided Dec. 21, 2000.

W. Michael Jacobs, for appellant.

David H. Jacobs, pro hoc vice, with whom Steven C. Kahn, Washington, DC, was on the brief, for appellees.

Before REID and WASHINGTON, Associate Judges, and PRYOR, Senior Judge.

PRYOR, Senior Judge:

In a civil action against appellees Miller & Long Company and one of its employees, the trial judge granted summary judgment against appellant, dismissing a complaint which asserted multiple causes of action. Applying familiar standards controlling in summary judgment rulings, we reverse the judgment and remand the case to the trial court.

### I.

Appellant Robert Ollie Klock ("Klock") was the on-site foreman for John J. Kirlin

Company ("Kirlin"), a subcontractor at a construction site in the District of Columbia. Appellee Kenneth N. Morris ("Morris") was the superintendent for appellee Miller & Long Company, Inc. ("Miller & Long"), another subcontractor at the same construction site. In August 1995, appellant approached Morris to inquire about the possibility of Kirlin's employees using Miller & Long's forklift on a part-time basis. Apparently, Miller & Long possessed the only forklift that was capable of navigating the entire construction site. Miller & Long, through Morris, agreed to allow Kirlin's employees to use the forklift, contingent upon the execution of a contractual release (hereinafter "Release").[1] On August 9, 1995, appellant signed the following Release:

> I, the undersigned, *Robert O. Klock (Steamfitter Foreman)*,[2] an authorized representative of *J.J. Kirlin* in consideration of the permission granted to us on this day *8/9/95 (Duration of Job)* to use the *Forklift/Crane* of Miller & Long Company, Inc., located at *1717 Penns. Ave.* for the purpose of *unload equipment; transfer to garage* acknowledge that:
>
> We know the risks and dangers of using said property/equipment, assume all risk of injury to any representative/employee of our company, any persons under our direct or implied supervision, and any property that may be sustained in connection with our use of said equipment/property and agree, for all employees/representatives of this company, any persons under our direct or implied supervision, as well as their heirs, administrators, assignees and/or successors to waive, indemnify, save harmless and generally release all claims, demands, or causes of action, whether in equity or law (including, but not limited to, actions for against Miller & Long Co., Inc. for negligence), that they, as employees of this company, may have or that may

---

1. The parties did not exchange any monetary consideration.

2. The underlining designates the portions of the Release that were handwritten.

arise against Miller & Long, its representatives, officers, or employees for any personal, physical or psychological injury or property damage that may be sustained by any employees/representatives of this company, while using Miller & Long's property, equipment, machinery or motor vehicles, or while on a Miller & Long job site.

The intent of this agreement is that we shall accept all risks and responsibilities of this equipment as if it were our own and, further, to accept this risk and responsibility even if any of the above losses result from the negligence of Miller & Long or its employees. The law of the State of Maryland will govern the interpretation and construction of this release.

/s/ *Robert O. Klock*

/s/ *Kenneth Neil Morris*

On October 31, 1995, appellant allegedly fell and injured his shoulder while pushing the forklift after it had broken down. On May 11, 1998, appellant filed a complaint in the Superior Court setting forth five counts. Based upon a negligence theory, Count I alleged that Morris spilled gasoline on the ground while refueling the forklift. Klock asserted that the spill created a gasoline slick that subsequently caused him to slip and fall while attempting to push the forklift after it had broken down. Count II, a products liability claim, alleged that the forklift was defective and unreasonably dangerous because the "battery with which it was equipped was inadequate, weak, and discharged, foreseeably causing lessees ... to attempt to push the forklift." Respectively, the three remaining counts alleged breach of express warranty, breach of the implied warranty of fitness for a particular purpose, and breach of the implied warranty of merchantability.

On July 8, 1999, appellees jointly filed a motion for summary judgment. Appellees' sole argument was that the unambiguous terms of the Release insulated them from all of appellant's claims. On July 27, 1999, appellant filed his opposition to appellees' motion for summary judgment. Appellant principally argued that: (1) the Release was void pursuant to MD.CODE ANN. CTS. & JUD. PROC. § 5–305 (1997)[3] as an indemnification agreement collateral to a construction contract; (2) the Release was void against public policy because it was the product of grossly unequal bargaining power and otherwise affected the public interest; (3) the Release was void as an unconscionable agreement pursuant to MD. CODE ANN. COMMERCIAL LAW 1 § 2A–108 (1997); and (4) the Release improperly disclaimed warranties under Maryland law.

On August 12, 1999, the trial court granted appellees' motion for summary judgment without a hearing and without a statement of reasons.[4] Klock appeals the trial court's summary judgment decision.

## II.

### A. *Scope of Review*

In reviewing a grant of summary judgment, this court conducts an independent, *de novo* review of the record in a light most favorable to the opposing party. *See Seigel v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 745 A.2d 301, 303 (D.C. 2000); *Zhou v. Jennifer Mall Restaurant, Inc.*, 699 A.2d 348, 350 (D.C.1997); *Smith v. Union Labor Life Ins. Co.*, 620 A.2d 265, 267–68 (D.C.1993). Our appellate standard of review is the same as the trial court's standard for initially resolving the

---

**3.** This statute has subsequently been renumbered to MD.CODE ANN. CTS. & JUD. PROC. § 5–401 (1998) and is substantially identical thereto.

**4.** Prior to the trial court's ruling on the motion for summary judgment, appellees apparently filed a third-party complaint against Kirlin. Before Kirlin was required to file a responsive pleading, however, the trial court ordered summary judgment in favor of appellees, thereby rendering the third-party complaint moot.

underlying motion for summary judgment. *See Burt v. First American Bank,* 490 A.2d 182, 184–85 (D.C.1985). Summary judgment should be granted only when there are no genuine issues of material fact and when the moving party is entitled to judgment as a matter of law. *See* Super. Ct. Civ. R. 56(c); *Burt, supra,* 490 A.2d at 185. The moving party bears the burden of establishing both the absence of a material factual dispute and entitlement to judgment as a matter of law. *Burt, supra,* 490 A.2d at 185. Any doubts about the existence of a factual dispute must be resolved in favor of the non-moving party. *Seigel, supra,* 745 A.2d at 303.

### B. *Genuine Issues of Material Facts*

■ Although appellant offers a number of contentions to support his view that the trial court improperly granted summary judgment to appellee, we need not address all of them, primarily because the disposition of the negligence claim is pivotal to the resolution of this appeal.

With regard to genuine issues of material facts, we observe that the present record of deposition testimony reveals conflicting descriptions of the manner in which the incident occurred. Appellant testified that he believed that Morris attempted to refuel the forklift after it had earlier stopped functioning. According to appellant, Morris did this outside appellant's presence because appellant had gone inside to receive a telephone call. Appellant further claims that Morris, soon after refueling the forklift, witnessed appellant's fall because Morris was helping to push the forklift. Directly contrary, Morris testified in his deposition that he was not pushing the forklift nor was he even in the general area of the forklift when appellant fell. Rather, Morris testified that he first heard of Klock's injury when he returned to the ground from the top of a building and appellant told him that he had fallen. Morris also did not remember whether he refueled the forklift earlier that day.

In the context of a ruling granting summary judgment, it is evident that there are factual disagreements between the parties with respect to a nexus between appellant's fall and the forklift. While Morris' purported negligence—failure to properly refuel the forklift, failure to detect the gas spill, and failure to warn of the spill—could be construed to be related to the forklift, the major thrust of the negligence claim is that appellant fell on a gasoline puddle created by Morris. If appellant's allegations only indirectly implicate the piece of equipment involved here, there is a critical question whether the provisions of the Release are indeed applicable to this litigation. Unless the Release, or some other legal principle controls the outcome of this case, we cannot agree that there are no disputed questions of material fact.

### C. *Controlling Legal Principles*

Of course, the applicability of the Release, depends, by its own terms, on whether an injury occurred while using the equipment of appellee Miller & Long on the construction site. In such circumstances the agreement purports to broadly insulate appellee Miller & Long from liability from all risks, expressly including risks resulting from the sole negligence of Miller & Long's employees. The agreement also provides that the interpretation of the document will be governed by Maryland law.

■ In Maryland, contracts should be interpreted to effectuate the intentions of the parties by considering "the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution." *Pacific Indem. Co. v. Interstate Fire & Cas. Co.,* 302 Md. 383, 488 A.2d 486, 488 (Md.1985); *Chicago Title Ins. Co. v. Lumbermen's Mut. Cas. Co.,* 120 Md.App. 538, 707 A.2d 913, 917 (1998). With this background, the trial judge examines the four corners of the release to determine if it is unambiguous. *See Heat & Power Co. v. Air Prods. & Chemicals, Inc.,* 320 Md. 584, 578 A.2d 1202, 1208

(1990). When a contract is clear and unambiguous, the court should interpret the contract terms as a matter of law, presuming that the parties intended what they expressed. *Chicago Title, supra,* 707 A.2d at 917. If the contract is ambiguous, summary judgment is inappropriate as the trier of fact must then resolve the meaning of the contract. *See id.* at 918. In doing so, the trier of fact is free to consider "extrinsic evidence which sheds light on the intentions of the parties at the time of the execution of the contract." *Heat & Power, supra,* 578 A.2d at 1208. "An ambiguity exists when, to a reasonably prudent person, the language used in the contract is susceptible of more than one meaning." *Id.*

We are mindful of the potential impact of MD.CODE ANN. CTS. & JUD. PROC. § 5–401 (1998)[5] on appellant's causes of action. Section 5–401 states:

> A covenant, promise, agreement or understanding in, or in connection with or collateral to, a contract or agreement relating to the construction, alteration, repair, or maintenance of a building, structure, appurtenance or appliance, including moving, demolition and excavating connected with it, purporting to indemnify the promisee against liability for damages arising out of bodily injury to any person or damage to property caused by or resulting from the sole negligence of the promisee or indemnitee, his agents or employees, is against public policy and is void and unenforceable. This section does not affect the validity of any insurance contract, workers' compensation, or any other agreement issued by an insurer.

Maryland cases interpreting § 5–401 and its predecessor also make it clear that, "[t]he statute does not purport to void or excise an entire contract *provision.*" *Bethlehem Steel v. G.C. Zarnas & Co.,* 304

Md. 183, 498 A.2d 605, 611 (1985) (emphasis in original). "Rather, it renders void and unenforceable a 'covenant, promise, agreement or understanding' which purports to indemnify the promisee against liability for damages caused by the promisee's sole negligence." *Id.* Indeed, the Maryland Court of Appeals has consistently stated that, "a particular contract provision or sentence can properly be construed as reflecting two agreements, one providing for indemnity if the promisee is solely negligent and one providing for indemnity if the promisee and promisor are concurrently negligent, only the former agreement is voided by the statute." *Heat & Power, supra,* 578 A.2d at 1206 (quoting *Bethlehem Steel, supra,* 498 A.2d at 611). "In other words ... the statute renders unenforceable a contract provision only insofar as it embodies an agreement providing for indemnity to the promisee when the promisee is solely negligent." *Bethlehem Steel, supra,* 498 A.2d at 611.

### III. *Conclusion*

In our view the existing record reflects disputed questions of material fact between the parties, at least with respect to the claim of negligence. There are also substantial issues to be resolved in determining whether appellee is entitled to judgment as a matter of law. An initial inquiry in this regard is whether the tortious conduct alleged does in fact involve the Release. In turn, the court should consider whether the Release, by its terms, is "... a contract or agreement relating to the construction ... of a building ..." within the meaning of § 5–401. If so, the court must then determine the impact of the statute on the Release.[6] As noted, appellant not only challenges the Release on the basis of the statute, but also for other reasons stated in his opposition to summary judgment. Additionally,

---

**5.** This statute was renumbered to its current designation on April 8, 1997. Its substantively identical predecessor was MD.CODE ANN. CTS. & JUD. PROC. § 5–305 (1995).

**6.** In scrutinizing the Release, we observe that the agreement is one between the two corporate entities; appellant signed the document as an agent of his company.

appellant asserts other claims grounded on breach of warranty. Because no statement of reasons was given by the trial court in rendering judgment, we do not reach nor address these questions. We conclude, however, on the existing record, that the trial judge erred in finding no material genuine questions of fact, and, without more, concluding appellee was entitled to prevail as a matter of law. Accordingly, we vacate the judgment and remand the case to the trial court.

*Reversed and remanded.*