**MILLER & LONG COMPANY, INC., and Kenneth Neil Morris, Appellants,**

v.

**JOHN J. KIRLIN, INC., Appellee.**

No. 04–CV–1573.

District of Columbia Court of Appeals.

Argued Jan. 17, 2006.

Decided Oct. 5, 2006.

David H. Jacobs, for appellants.

Roger S. Mackey, New York City, for appellee.

Before RUIZ, GLICKMAN and KRAMER, Associate Judges.

RUIZ, Associate Judge:

Miller & Long Co., Inc., and its employee, Kenneth Neil Morris, (referred to as "Miller & Long") appeal the denial of their third-party complaint for attorney's fees and costs against John J. Kirlin, Inc. When a Kirlin employee, Mark Klock, was injured, he sued Miller & Long in tort.[1] Miller & Long, in turn, filed a third-party complaint against Kirlin for indemnification of attorney's fees and costs incurred in defending Klock's lawsuit. The claim was made pursuant to an agreement between the parties for the use of Miller &

---

1. We heard an appeal from the underlying tort suit, and reversed the grant of summary judgment for Miller & Long. *Klock v. Miller & Long Co.*, 763 A.2d 1147 (D.C.2000). On re-

mand, the trial court granted judgment as a matter of law to Miller & Long. The appeal presently before the court does not concern the judgment in the underlying tort suit.

Long's construction equipment by Kirlin. We conclude that the trial court misinterpreted the contract, and reverse.

## I.

The facts of the underlying tort suit were elaborated the first time that we heard this case on appeal, *see Klock v. Miller & Long Co.*, 763 A.2d 1147, 1148–49 (D.C.2000); in this opinion, we repeat only those facts that are relevant to the issue of indemnification. The entire text of the "Equipment Release Agreement" under which appellants' claim indemnification follows:

I, the undersigned, Robert O. Klock (Steamfitter Foreman),[2] an authorized representative of J.J. Kirlin, in consideration of the permission granted to us on this day 8.9.95 (Duration of Job) to use the Forklift/Crane of Miller & Long Company, Inc., located at 1117 Penns. Ave. for the purpose of Unload Equipment, transfer to Garage acknowledge that:

We know the risks and dangers of using said property/equipment, assume all risk of injury to any representative/employee of our company, any persons under our direct or implied supervision, and any property that may be sustained in connection with our use of said equipment/property and agree, for all employees/representatives of this company, any persons under our direct or implied supervision, as well as their heirs, administrators, assignees and/or successors to waive, indemnify, save harmless and generally release all claims, demands, or causes of action, whether in equity or law (including, but not limited to, actions for against Miller & Long Co., Inc. for negligence), that they, as employees of this company, may have or that may arise against Miller & Long, its representatives, officers, or employees for any personal, physical or psychological injury or property damage that may be sustained by any employees/representatives of this company, while using Miller & Long's property, equipment, machinery or motor vehicles, or while on a Miller & Long job site.

The intent of this agreement is that we shall accept all risks and responsibilities of this equipment as if it were our own and, further, to accept this risk and responsibility even if any of the above losses result from the negligence of Miller & Long or its employees. The law of the State of Maryland will govern the interpretation and construction of this release.

The trial court interpreted the contract as "indicat[ing] that the use of the forklift/crane is for the purpose of unloading equipment," and that Miller & Long is entitled to indemnification *only* if "the plaintiff's [Klock's] claim arose from the use of the forklift by Kirlin." The court found as a factual matter that Klock's "fall occurred as a result of his attempt to push the forklift because it failed to start" and, therefore, that there was "an insufficient nexus" connecting the injury with the contemplated use of the forklift for unloading equipment. Consequently, the trial court ruled that the indemnification provision does not apply to Klock's claim against Miller & Long.

## II.

■ We review the trial court's interpretation of a contract *de novo, see Rastall v. CSX Transp. Inc.*, 697 A.2d 46, 50 (D.C. 1997), applying the law chosen by the parties to govern their contract, in this case, the law of Maryland. As we observed in the prior appeal,

In Maryland, contracts should be interpreted to effectuate the intentions of the

---

**2.** The words underlined are fill-in-the-blanks.

parties by considering "the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution." *Pacific Indem. Co. v. Interstate Fire & Cas. Co.*, 302 Md. 383, 488 A.2d 486, 488 (1985); *Chicago Title Ins. Co. v. Lumbermen's Mut. Cas. Co.*, 120 Md.App. 538, 707 A.2d 913, 917 (1998). With this background, the trial judge examines the four corners of the release to determine if it is unambiguous. *See Heat & Power [Corp.] Co. v. Air Prods. & Chemicals, Inc.*, 320 Md. 584, 578 A.2d 1202, 1208 (1990). When a contract is clear and unambiguous, the court should interpret the contract terms as a matter of law, presuming that the parties intended what they expressed. *Chicago Title, supra*, 707 A.2d at 917. If the contract is ambiguous, summary judgment is inappropriate as the trier of fact must then resolve the meaning of the contract. *See id.* at 918. In doing so, the trier of fact is free to consider "extrinsic evidence which sheds light on the intentions of the parties at the time of the execution of the contract." *Heat & Power, supra*, 578 A.2d at 1208. "An ambiguity exists when, to a reasonably prudent person, the language used in the contract is susceptible of more than one meaning." *Id.*

*Klock*, 763 A.2d at 1150–51. We also noted in *dicta* that "the applicability of the [Equipment] Release [Agreement] depends, by its own terms, on whether an injury occurred while using the equipment of ... Miller & Long on the construction site." *Id.* at 1150. We did not, however, elaborate on what "using the equipment" might encompass, noting only that "[i]n such circumstances the agreement purports to broadly insulate ... Miller & Long from liability from all risks."[3] *Id.*

■ The Equipment Release Agreement provides that Kirlin will "save harmless" Miller & Long against "all claims" that "any ... employee" of Kirlin "may have or that may arise against Miller & Long ... while using Miller & Long's ... equipment." The question on appeal is whether Klock's claim against Miller & Long is covered by the indemnification provision.

We conclude that in the context of this agreement the trial court erroneously viewed Miller & Long's promise to Kirlin—to permit use of its forklift "for the purpose of unload[ing] equipment"—as creating a limitation on the promise of indemnification Kirlin gave in return. No such limitation is apparent from the clear and expansive language of the contract: Kirlin agreed to "accept *all* risks and responsibilities of this equipment as if it were [its] own...." (Emphasis added.) As further indication of the intended breadth of the indemnification, Kirlin additionally agreed to cover claims by its employees "while on a Miller & Long job site," presumably even if unrelated to use of the equipment. We perceive no reason to deviate from the clear import of the contractual language, as the acceptance by Kirlin of financial responsibility for all claims by its own employees is a reasonable allocation, in a business context, of an

---

**3.** We also noted the potential impact of Maryland statutory law, which renders "void and unenforceable" indemnification provisions in construction contracts insofar as they indemnify for acts of negligence by the indemnitee. *See Klock*, 763 A.2d at 1151 (citing MD.CODE ANN. CTS. & JUD. PROC. § 5–401 (1998)). Even if we assume—as the trial court determined—that the Equipment Release Agreement is an "agreement relating to construction" covered by the statute, indemnification would not be against Maryland's expressed policy in this case, where Miller & Long was not found negligent. The trial court did not base its ruling on the Maryland statute, and appellee does not argue that it precludes indemnification in this case.

insurable risk. The trial court's interpretation, on the other hand, could lead to an absurd result, for it exonerates Kirlin of the duty to indemnify if one of its employees actually used the equipment in an unauthorized manner or for an unintended purpose.

As a result of its erroneous interpretation limiting the promise of indemnification to the anticipated use of the equipment, the court applied the promise to indemnify for claims "in connection with [Kirlin's] use of said equipment" too narrowly on the facts of this case. Moreover, even if the "use" referred to in the indemnification provision were limited to the forklift's use for the purpose of "unloading," we conclude that the parties intended to include activity reasonably designed to facilitate that purpose—such as trying to move the equipment when it breaks down—as being "in connection with" that use.[4] In sum, under the Equipment Release Agreement, Kirlin was permitted the use of Miller & Long's forklift and, in exchange, Miller & Long was to be indemnified for the costs of litigating claims connected to Kirlin's employees' use of that forklift, such as Klock's tort suit.[5]

We reverse the judgment denying appellants' Third-party Complaint for Indemnification and remand for the trial court to act on that claim pursuant to this opinion.

*So ordered.*

---

4. Even if this term were ambiguous, resort to *extrinsic evidence* would confirm that both sides envisioned that emergency repairs would be undertaken "in connection with" using the forklift as the evidence showed that "[I]t was a very, very old forklift" that frequently broke down.

5. Because we decide the case in favor of appellants by application of Maryland's general rules of contract interpretation, we have no need to decide whether the interpretation of the phrase "arising out of" in insurance cases under Maryland law, *see Mass Transit Admin. v. CSX Transp., Inc.*, 349 Md. 299, 708 A.2d 298, 302–10 (1998), applies to the Equipment Release Agreement.